[No. A123649. First Dist., Div. Two. Mar. 9, 2010.]

In re VICTOR L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VICTOR L., Defendant and Appellant.

COUNSEL

Eileen Manning-Villar for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RICHMAN, J.**—This case exemplifies a growing trend among juvenile delinquents placed on probation: challenging conditions of probation in the appellate courts without having objected to the same conditions at the time they were imposed. This approach has perhaps been inspired by *In re Sheena K.* (2007) 40 Cal.4th 875, 889–890 [55 Cal.Rptr.3d 716, 153 P.3d 282], in which the Supreme Court acknowledged the viability of such challenges, so long as they present pure questions of law based solely on facial constitutional grounds and do not require a review of the sentencing record, and are easily remediable on appeal.

We address in this case six conditions of juvenile probation contained on preprinted forms designed for use with juvenile probationers who are gang members or at risk for gang membership. The conditions in question are wide-ranging in content, including restrictions on association with disapproved individuals, being in the presence of dangerous or deadly weapons, being in areas of "gang-related activity," possession of cell phones and other wireless communication devices, use of computers and the Internet, and the future acquisition of tattoos. They are challenged on grounds that they are vague and overbroad, as well as impairing the right to travel and First Amendment freedoms.

The Attorney General concedes that one of the conditions must be modified. We conclude that three others should also be modified in order to avoid unconstitutional vagueness. Except as modified, we affirm the judgment.

## FACTUAL BACKGROUND

Appellant Victor L. was adjudged a ward of the court under Welfare and Institutions Code section 602[1] based on his no contest plea to a misdemeanor violation of Penal Code section 12020, subdivision (a) (possession of specified illegal weapons).

Officers of the police gang unit responded to a call complaining that a group of gang members, all wearing blue, were drinking alcohol in the middle of the street. As the police arrived, they found Victor seated in the driver's seat of a car blocking the street, with several young men as passengers, and a group of other young men congregated around the car. The individuals surrounding the car quickly dispersed. The police signaled for Victor to pull to the curb. Victor and one of the passengers were known to the detaining officer as members of the San Mateo Sureños street gang.

After the officers learned that Victor had been driving without a license, they decided to tow the car. During an inventory search, the police recovered a two-foot-long metal bar and a three- to four-inch-long screwdriver under the driver's seat, within reach of the driver, as well as a sawed-off, operational, loaded pellet gun in the trunk of the car.

Victor had previously admitted to the arresting officer that he was a member of the San Mateo Sureños. He told the police and probation officers that most of his friends were Sureños and, when he was not at work, he hung out with his Sureño friends. He told the arresting officer he had the weapons in his car to protect himself against Norteños, but later denied this statement when interviewed by the probation officer.

Victor, who was just a few days shy of his 18th birthday, was originally referred to probation on three charges, one of them being felony participation in a criminal street gang. (Pen. Code, § 186.22, subd. (a).) He was charged on only two counts: driving without a license (Veh. Code, § 12500, subd. (a)) and manufacture or possession of a dangerous weapon, a wobbler (Pen. Code, § 12020, subd. (a)). Upon his misdemeanor plea to a violation of Penal Code section 12020, subdivision (a), the other charge was dismissed.[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The plea was evidently negotiated with the intention that Victor would admit possession of a billy club, but he admitted instead possession of the modified pellet gun.

The court calculated the maximum period of confinement as one year, but granted Victor probation, ordering him to live with his parents under supervision of the probation officer. The only issues on appeal involve the validity of various conditions of probation.

## DISCUSSION

### A. *The claims*

Victor claims that the following conditions of probation are facially unconstitutional and must be modified or stricken:

1. that he "not associate with anyone with whom a parent or the Probation Officer prohibits association";

2. that he not "remain in any building, vehicle or in the presence of any person where any dangerous or deadly weapons or firearms or ammunition exist";

3. that he stay away from "areas known by him for gang-related activity";

4. that he "not be in possession of any paging device or any other portable communication equipment, including but not limited to, scanners, without the express permission of the probation officer";

5. three conditions limiting access to the Internet, namely (a) that he "shall not access or participate in any Social Networking Site, including but not limited to Myspace.com";[3] (b) that he "not use, possess or have access to a computer which is attached to a modem or telephonic device"; and (c) that he "shall not be on the Internet without school or parental supervision"; and

6. that he not obtain "any new tattoos, brands, burns or voluntary scarring."

Victor challenges the first three conditions listed above on grounds of vagueness and overbreadth, the second and third conditions as impinging upon his constitutional right to travel, the fourth and fifth conditions as overbroad, and the sixth condition as overbroad as applied to him because it was imposed after his 18th birthday.

### B. *The general legal principles*

"The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents" (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 [93

---

[3] This condition continues: "All Internet usage is subject to monitoring by Probation, parents or school officials." Victor does not challenge this aspect of the condition.

Cal.Rptr.2d 212] (*Antonio R.*)), thereby occupying a "unique role . . . in caring for the minor's well-being." (*In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500 [281 Cal.Rptr. 6] (*Laylah K.*).) In keeping with this role, section 730, subdivision (b), provides that the court may impose "any and all reasonable [probation] conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. "[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . .' " (*Ginsberg v. New York* (1968) 390 U.S. 629, 638 [20 L.Ed.2d 195, 88 S.Ct. 1274].) This is because juveniles are deemed to be "more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." (*Antonio R., supra,* 78 Cal.App.4th at p. 941.) Thus, " ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' " (*In re Sheena K., supra,* 40 Cal.4th 875, 889 (*Sheena K.*); see also *In re R.V.* (2009) 171 Cal.App.4th 239, 247 [89 Cal.Rptr.3d 702]; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242–1243 [285 Cal.Rptr. 16] [rule derives from court's role as *parens patriae*].)

■ Of course, the juvenile court's discretion is not boundless. Under the void for vagueness doctrine, based on the due process concept of fair warning, an order " 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K., supra,* 40 Cal.4th at p. 890.) The doctrine invalidates a condition of probation " ' "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' " (*Ibid.*) By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an " ' "*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' " (*Ibid.*)

■ In addition, the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. (*Sheena K., supra,* 40 Cal.4th at p. 890; *In re Luis F.* (2009) 177 Cal.App.4th 176, 189 [99 Cal.Rptr.3d 174].)

### C. Restrictions on Victor's right to associate with individuals disapproved of by his probation officer or his parents

Victor's first challenge is to the condition prohibiting him from associating with "anyone [with] whom a parent or Probation Officers prohibits association." The Attorney General concedes that condition is indeed unconstitutionally vague in that it does not give Victor prior notice of the individuals with whom he is prohibited from associating.[4] We agree with that concession.

■ The condition is very similar to those that have previously been held unconstitutional for lack of a knowledge requirement. In *Sheena K.*, the Supreme Court modified a condition of probation forbidding a juvenile to associate with anyone " 'disapproved of by probation' " after finding it unconstitutionally vague, revising it to specify that the probationer need avoid only those individuals " 'known to be disapproved of' by [the] probation officer." (*Sheena K., supra*, 40 Cal.4th at pp. 890, 892.) Likewise, in *In re Justin S.* (2001) 93 Cal.App.4th 811, 813, 816 [113 Cal.Rptr.2d 466], the court modified a condition prohibiting a minor's association with " 'any gang members' " to prohibit only association with "persons known to the probationer to be associated with a gang." Most recently, *In re H.C.* (2009) 175 Cal.App.4th 1067, 1070–1072 [96 Cal.Rptr.3d 793] (*H.C.*) held that a condition of probation prohibiting association with any " 'known probationer, parolee, or gang member' " must be modified to include a personal knowledge requirement, since the word "known" did not specify *who* must have knowledge of the prohibited associate's status. The condition in this case, too, failed to give Victor notice of which individuals he must avoid.[5] (Accord, *People v. Leon* (2010) 181 Cal.App.4th 943, 949–951 [104 Cal.Rptr.3d 410] [condition of adult probation prohibiting association with gang members modified to include knowledge requirement].)

---

[4] The condition, in full, reads: "The Minor shall not be a member of any gang, [meaning a 'criminal street gang' as defined in Penal Code Section 186.22 (f)], nor associate with any person known by the Minor to be a gang member, or with anyone whom a parent or Probation Officers prohibits association."

[5] (Cf. *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1329–1332 [98 Cal.Rptr.3d 477] [condition prohibiting association with person known by minor to be on probation was valid]; *In re Byron B.* (2004) 119 Cal.App.4th 1013, 1015, 1018 [14 Cal.Rptr.3d 805] [rejecting minor's challenge, on the ground of vagueness, to a probation condition that the minor "must '[n]ot have direct or indirect contact with anyone *known to be* disapproved by parent(s)/guardian(s)/probation officer, staff' " because the order included the "crucial words, 'known to be' "]; *In re Frank V., supra*, 233 Cal.App.3d at pp. 1237, 1241–1242 [upholding probation condition forbidding the minor to associate with any individuals "disapproved of by his probation officer" based on juvenile court's limiting statement that he could not associate with people whom his parents or probation officer " 'tell you . . . that you can't hang out with' "].)

In light of the foregoing authorities and the Attorney General's concession, we hold the first-listed condition of probation is unconstitutionally vague and will modify it to include a personal knowledge requirement. In light of this conclusion, we need not address the overbreadth claim.

### D. *Restrictions on Victor's presence "where dangerous or deadly weapons or firearms or ammunition exist"*

On similar grounds, Victor claims the second-listed condition of probation is unconstitutionally vague and overbroad, as well as impinging on his constitutional right of intrastate travel. (*In re White* (1979) 97 Cal.App.3d 141, 148–149 [158 Cal.Rptr. 562]; cf. *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1100–1101 [40 Cal.Rptr.2d 402, 892 P.2d 1145] [right derives from Cal. Const., art. I, §§ 7, 24].) Here, the Attorney General disagrees with Victor. We do not.

The language to which Victor objects is that he must "not remain in any building, vehicle or in the presence of any person where dangerous or deadly weapons or firearms or ammunition exist." Because the condition does not limit its proscription to buildings or vehicles that Victor *knows* to contain, or people who he *knows* to possess, such weapons, he claims the condition is vague and overbroad. Because other people in public places or private homes may be carrying concealed weapons without his knowledge, Victor argues that, in the absence of a knowledge requirement, he "could easily violate the condition without even realizing it." Moreover, he argues that gun possession is so widespread in his neighborhood that the condition of probation "effectively limits [his] ability to visit most places in his neighborhood and . . . [impermissibly] limits his right to travel."

The parties concur that knowledge is required (*People v. Freitas* (2009) 179 Cal.App.4th 747, 751–752 [102 Cal.Rptr.3d 51]) and disagree only as to whether that requirement is adequately conveyed by the language contained in the standard probation condition. The Attorney General points out that the act forbidden is to "remain" in a building or vehicle where weapons "exist," or in the presence of a person who possesses such weapons. Thus, he contends, the condition as written implies that Victor need only leave a place or separate company with a person upon his gaining *knowledge* of the presence of a weapon. He concludes the language itself "reasonably and specifically imports the knowledge requirement."

Reasonably, perhaps, but not specifically. The word "remain" by itself does not clearly establish a knowledge requirement. Nor do we agree with the Attorney General that the condition, on its face, "only proscribes knowing continued presence where weapons or ammunition are present."

The Attorney General argues that no modification is necessary because the language should be given a plain, commonsense reading (*In re R.P.* (2009) 176 Cal.App.4th 562, 566 [97 Cal.Rptr.3d 822]), and a court may not revoke probation unless the evidence supports " 'a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation.' " (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 [95 Cal.Rptr.3d 858]; see *People v. Galvan* (2007) 155 Cal.App.4th 978, 982–985 [66 Cal.Rptr.3d 426].) While the requirement of proof of willfulness may save Victor from an unconstitutional finding of guilt based on an unknowing probation violation, that is cold comfort to a probationer who suffers from an unfounded arrest and detention based on the whim or vengeance of an arbitrary or mean-spirited probation officer. (Cf. *People v. Lopez* (1998) 66 Cal.App.4th 615, 629 [78 Cal.Rptr.2d 66].)

■ Due process requires more. It requires that the probationer be informed *in advance* whether his conduct comports with or violates a condition of probation. For this reason we will modify the condition of probation to make that requirement explicit.[6] (*People v. Freitas, supra*, 179 Cal.App.4th at p. 752; *People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [23 Cal.Rptr.2d 340].)

### E. *Prohibition from being in "areas" known by Victor for "gang-related activity"*

Next, Victor challenges the condition of probation ordering him to stay away from "areas known by [him] for gang-related activity."[7] This condition, unlike the two previously discussed, does expressly include a personal knowledge requirement. In that respect, the "gang-related activity" condition meets the minimum requirements established by *H.C., supra*, 175 Cal.App.4th 1067, which recently grappled with similar language. The Sixth District struck down a condition of probation forbidding a minor to "frequent" areas of " 'gang related activity' " for lack of a knowledge requirement.[8] (175 Cal.App.4th at p. 1072.) Its holding suggests that a knowledge requirement

---

[6] Because we modify the condition of probation to prohibit Victor's presence only where he knows weapons exist, we need not address the challenges based on overbreadth or the right to travel.

[7] The condition, in its entirety, reads: "Minor shall not be in any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity, nor participate in any gang activity." Victor does not challenge the language prohibiting him from visiting areas where gang members "meet or get together," acknowledging that such a proscription is supported by case law. (*Laylah K., supra*, 229 Cal.App.3d at p. 1499 [gang "gathering area"]; *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1616 [264 Cal.Rptr. 476] [" 'known gang gathering area' "].)

[8] One problem the Court of Appeal had with the condition in *H.C.* was the use of the verb "frequent." (*H.C., supra*, 175 Cal.App.4th at p. 1072.) That problem does not exist in this case.

solves the problem: "At the very least the condition . . . should be revised to say that the minor not visit *any area known to him to be a place of gang-related activity*." (*Ibid.*, italics added.)

But Victor claims that is not enough. He claims the phrase "gang-related activity" is still vague and overbroad. We agree with Victor that, even with a knowledge requirement, the gang-related activities condition is impermissibly vague in that it does not provide notice of what areas he may not frequent or what types of activities he must shun. The condition, as written, is not sufficiently precise for Victor to know what is required of him. (*Sheena K., supra,* 40 Cal.4th at p. 890.)

 We note at the outset that similar conditions of probation have been used in other cases, both adult (*People v. Bailey* (2002) 101 Cal.App.4th 238, 242 [123 Cal.Rptr.2d 729]) and juvenile (*H.C., supra,* 175 Cal.App.4th at p. 1072). Since reformation and rehabilitation of the minor are the goals of juvenile probation, this type of broad prohibition is reasonable, at least in theory, under section 730. "Where a court entertains genuine concerns that the minor is in danger of falling under the influence of a street gang, an order directing a minor to refrain from gang association is a reasonable preventive measure in avoiding future criminality and setting the minor on a productive course." (*Laylah K., supra,* 229 Cal.App.3d at p. 1502.) Absolute certainty and precision are not required to avoid a claim of unconstitutional vagueness; " ' " '[r]easonable certainty' " ' " and " 'reasonable specificity' " are all that is required. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117 [60 Cal.Rptr.2d 277, 929 P.2d 596]; see *H.C., supra,* 175 Cal.App.4th at p. 1070.)

 Nevertheless, we are troubled by the lack of specificity in the language of the condition. Victor argues, first, that the term "gang" can have "both 'sinister' and 'benign connotations.' " (See *People v. Lopez, supra,* 66 Cal.App.4th at pp. 631–632; see also *In re Jorge G.* (2004) 117 Cal.App.4th 931, 939 [12 Cal.Rptr.3d 193].) We need not tarry over this argument, for it is obvious that the juvenile court intended only to ban Victor from places involving activity by "sinister" gangs. The probation conditions include a clause specifying that a "gang" "mean[s] a criminal street gang as defined in Penal Code section 186.22(f)." This definition need not be included in every gang condition for its meaning to be clear. Victor need not worry about attending a Rotary Club meeting or an Eagle Scout campout.

We have more difficulty with the second prong of Victor's argument, however, which turns on the broad implications of the word "activity." Victor acknowledges that the phrase "gang related crime" has been upheld against a

challenge that it was unconstitutionally vague,[9] but he argues that "gang-related activity" has a much broader meaning. Too broadly construed, he suggests, the condition of probation could significantly impair his freedom of movement.

For instance, given that gang members might mail a letter at the post office "for the benefit" of a street gang, or might purchase groceries "in association" with other gang members (Pen. Code, § 186.22, subd. (b)(1)), Victor expresses concern that he might be guilty of violating probation simply by shopping at the same grocery store or using the same post office that other gang members patronize. Of course, we could not condone such an interpretation, nor do we believe such a reading of the condition of probation would be reasonable.

Still, the word "activity" is one of surpassing breadth. One dictionary defines it, inter alia, as "the quality or state of being active," with "active" being defined as, "characterized by action rather than contemplation or speculation." (Webster's New Collegiate Dict. (1981) p. 12.) The use of the phrase "gang-related activity" in the condition of probation raises the specter that it could be misapplied by law enforcement unless further specification were provided.

Indeed, the "gang-related activity" restriction appears to have been intentionally designed to banish juvenile gang members from a broad category of locations, not simply areas where gang members "meet" or "get together," which are the focus of a separate proscription. Gang membership and "participat[ion] in any gang activity" are also separately forbidden. A separate clause also prohibits both one-to-one and group association with gang members. (See fn. 4, *ante.*) Therefore, the "gang-related activity" condition appears to have been intended to prevent Victor from coming into close contact with gang members, even short of voluntary association or participation in their activities. Since another condition commands him to obey all laws, this condition also bans his presence in gang-related locations, even though his conduct there would otherwise be lawful. Clearly, the court wanted to steer Victor entirely away from all gang influence, leaving no loopholes for maintaining his gang ties.

---

[9] *In re Jorge G., supra,* 117 Cal.App.4th 931 upheld against a vagueness challenge the statutory requirement that those convicted of "gang related" crimes must register as gang members, even though the statute did not define "gang related." (Pen. Code, § 186.30, subd. (b)(3).) The court concluded that a "gang" is a criminal street gang as defined in Penal Code section 186.22, subdivision (f), and that "gang related" crimes include, but are not limited to, all "crimes committed for the benefit of, at the direction of, or in association with a criminal street gang." (117 Cal.App.4th at p. 941, citing Pen. Code, § 186.22, subd. (b)(1).)

We question, however, whether it lawfully achieved its purpose. While no doubt intended to serve the reformative and rehabilitative goals of probation, the condition as written, without further specificity, is not sufficiently clear to put Victor on notice of the prohibited conduct. The ambiguity of the chosen language conjures up divergent possible definitions of the term "gang-related activity," and reasonable minds may differ as to precisely which "areas" would come within the condition's purview.

Perhaps the condition of probation was intended to proscribe Victor from entering his own gang's "turf" to help him avoid the temptation to further his gang involvement. One method of better defining such forbidden areas would be to establish descriptive or mapped boundaries for that purpose.[10] (E.g., *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1371 [257 Cal.Rptr. 821] [street boundaries]; *In re White, supra,* 97 Cal.App.3d at pp. 143–144 [described boundaries and map].) The areas forbidden would necessarily differ depending upon the gang to which a minor belonged and which areas that gang "claimed" as its territory. Such an individualized approach is consistent with the goals of probation (*In re White,* at pp. 150–151), yet nothing in the gang-related activity condition of probation provides for such an individualized specification of forbidden areas.

Our problem with the condition of probation is further illustrated by the fact that nothing in the court's language restricts the ban to areas of activity by Victor's own gang, the San Mateo Sureños. The literal language would prohibit his being in parts of town where any criminal street gangs thrive, even if he does not associate with members of any gang there. Indeed, as noted by the Sixth District, "[a]n area with 'gang related activity' might be, in some instances, an entire district or town." (*H.C., supra,* 175 Cal.App.4th at p. 1072.)

Moreover, if a minor lived within the area described by the gang-related boundaries, his banishment from it would be constitutionally suspect.[11] (*In re*

---

[10] This method was also endorsed by the Sixth District in *H.C.* Despite its holding, *H.C.* expressed some discomfort with banning the minor from areas of "gang related activity"—even with a knowledge requirement—advising that "[i]t would be altogether preferable to name the actual geographic area that would be prohibited to the minor and then to except from that certain kinds of travel, that is, to school or to work." (*H.C., supra,* 175 Cal.App.4th at p. 1072.)

[11] Probation restrictions on travel by adults have sometimes been held overbroad, unreasonable, or unconstitutional. (E.g., *In re White, supra,* 97 Cal.App.3d at pp. 147–152 [remanding for modification of condition of probation that prohibited prostitute from going into certain high-prostitution areas of Fresno, in part because it interfered with her right to intrastate travel]; *People v. Beach* (1983) 147 Cal.App.3d 612, 619–623 [195 Cal.Rptr. 381] [condition of probation requiring elderly widow convicted of involuntary manslaughter to relocate from home community was overbroad and violated her constitutional rights]; but see *U.S. v. Watson*

*Pedro Q., supra,* 209 Cal.App.3d at p. 1373.) If he worked or went to school in the district so defined, the condition would need to permit travel as necessary to attend to those aspects of his livelihood or education. (See *H.C., supra,* 175 Cal.App.4th at p. 1072; *People v. Smith* (2007) 152 Cal.App.4th 1245, 1248–1253 [62 Cal.Rptr.3d 316] [probation condition forbidding travel outside county invalid where such travel was required by defendant's job].) Such considerations call for an individualized list of stay-away areas, together with any exceptions necessary to reasonably accommodate the minor's legitimate work and educational needs.

An alternative reading of the "gang-related activity" condition might focus on the nature of the activity, rather than the geographic area in which it occurs, thereby forbidding Victor's presence in the immediate vicinity of activities or events likely to attract gang members. Such a focus would require specification of the types of events or locations that are off-limits. The forbidden "areas" could thus be narrowed to events or establishments such as automobile sideshows, gun dealerships, rap concerts, tattoo parlors, pool halls, or bars, regardless of geographic location. (Cf. *In re White, supra,* 97 Cal.App.3d at p. 151.)

■ While a remand to the trial court could perhaps clarify the forbidden zones in this case, we are concerned that the condition is contained on a preprinted form evidently applied to all minors in San Mateo County who are affiliated with a criminal street gang. To require the judge in each probation order to specify exactly which areas are forbidden to the individual gang member would impose an undue burden on the judiciary. Rather, we believe the probation officer is in a better position to identify the forbidden areas for each minor. We therefore elect to modify the condition of probation to

---

(9th Cir. 2009) 582 F.3d 974, 977, 983–985 [upholding condition of supervised release that prohibited a parolee, who had previously lived in San Francisco, from entering the city and county of San Francisco].)

In the context of juvenile probation, *Antonio R., supra,* 78 Cal.App.4th 937 upheld a condition of probation forbidding a minor to travel to an entire county, other than the one in which he lived, because he belonged to a gang in the county of nonresidence and had committed his underlying crimes there. (*Id.* at p. 939 & fn. 1.) The condition did not restrict Antonio's travel within the county where he lived, and included a "safety valve" that allowed him to travel to the other county with parental or probation officer approval. (*Id.* at p. 942.)

Prohibiting a minor from being anywhere in a town or district where he lives could be subject to constitutional challenge. (Cf. *Alex O. v. Superior Court* (2009) 174 Cal.App.4th 1176, 1180–1183 [95 Cal.Rptr.3d 438] [unconstitutional to prohibit U.S. citizen who lived in Mexico from entering U.S.]; *In re James C.* (2008) 165 Cal.App.4th 1198, 1205 [81 Cal.Rptr.3d 846] [same]; *In re Daniel R.* (2006) 144 Cal.App.4th 1, 7–8 [50 Cal.Rptr.3d 179] [condition forbidding minor to travel to Mexico had to be modified to avoid overbreadth]; *Alhusainy v. Superior Court* (2006) 143 Cal.App.4th 385, 390–393 [48 Cal.Rptr.3d 914] [requiring defendant to leave Cal. as part of plea bargain invalid]; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1081, 1084–1085 [22 Cal.Rptr.2d 893] [ordering minor, lawfully in the U.S., to live in Iran with his father for two years was unconstitutional].)

provide for the probation officer to notify Victor of the areas he must avoid. Indeed, even if this approach is not implied in fact by the conditions themselves, we think it must be implied in law in order to avoid a claim of unconstitutional vagueness.

Such specification, whether based on geographic or activity-based limits,[12] not only reinforces the knowledge requirement, but also makes the condition of probation both clear enough to avoid a vagueness challenge and narrow enough to escape a claim of overbreadth. This approach has been adopted by other courts. (See, e.g., *People v. Leon, supra,* 181 Cal.App.4th at p. 952 [modifying " 'gang-related activity' " condition to require knowledge]; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 248 [75 Cal.Rptr.3d 526] [modifying condition so as to forbid minor to " 'be at areas that you know, or that the probation officer informs you, are frequented by gang members' "].)

We therefore leave it to the probation officer in the first instance to consider whether a boundaries approach or an activity-specific approach would better serve his or her goals for Victor. We do not regard this as an unlawful delegation of power to the probation officer, as it does not give him or her an open-ended policymaking function. Rather, by forbidding Victor's presence in "areas" of "gang-related activity" the court itself imposed the general policy, and we modify that condition only to allow specification of exact limits to be made by the probation officer on an individualized basis.

Thus, our modification does not conflict with *People v. O'Neil* (2008) 165 Cal.App.4th 1351 [81 Cal.Rptr.3d 878] (*O'Neil*), where Division Three of this court struck down a condition of adult probation which provided as follows: " 'You shall not associate socially, nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.' " (*Id.* at p. 1354.) *O'Neil* found the delegation of such sweeping authority to the probation officer was overbroad because the "court's order does not identify the class of persons with whom defendant may not associate nor does it provide any guideline as to those with whom the probation department may forbid association. Without a meaningful standard, the order is too broad . . . ." (*Id.* at pp. 1357–1358.) In so holding, however, the court recognized the broader authority of juvenile probation officers. (*Id.* at p. 1358, fn. 4; see also *In re Pedro Q., supra,* 209 Cal.App.3d at pp. 1371–1373

---

[12] In so holding, we decline to endorse the dictum in *H.C., supra,* 175 Cal.App.4th at page 1072, which seems to suggest that identifying a geographic area is the only means of clarifying a "gang-related activities" ban. Likewise, *H.C.*'s suggestion of exempting the minor's travel through specifically identified areas for purposes such as travel to and from work or school (*ibid.*) may be valid if he only works or goes to school in the area, but it may unduly restrict his lawful activities within the area if he also lives there. Such an approach could also lead to an unwieldy list of allowable travel.

[probation officers may be given "wide discretion to enforce court-ordered conditions," but they may not impose conditions not expressly authorized by the court].)

■ Unlike *O'Neil, supra,* 165 Cal.App.4th 1351, the present case falls within the more general rule that a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer. "There are many understandable considerations of efficiency and practicality that make it reasonable to leave to the probation department the amplification and refinement of a stay-away order. The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation, and the class of people with whom the defendant is directed to have no association. Since the condition in this case contains no such standard by which the probation department is to be guided, the condition is too broad and must either be stricken or rewritten to provide the necessary specificity." (*Id.* at pp. 1358–1359.) Because the court's order specifies that areas of "gang-related activity" are the subject of the stay-away order, the discretion vested in the probation officer by our modification is appropriately circumscribed.

Under the modified condition, the probation officer should inform Victor in advance of the forbidden areas. If Victor disagrees with the probation officer's list or map, he can move to modify the condition of probation. (§ 778.) The court must then strike an appropriate balance between accomplishing the goals of juvenile probation and reasonably accommodating the minor's freedom of movement.

F. *The proscription on possession of any paging device or other portable communication equipment*

Next, Victor attacks the following restriction on his possession of portable communications equipment: "The Minor shall not be in possession of a paging device or any other portable communication equipment, including but not limited to scanners, without express permission of the Probation Officer." Arguing that cell phones are "ubiquitous" in our society, Victor contends the condition of probation is overbroad, in violation of his First Amendment rights, because it reaches constitutionally protected conduct and prohibits legitimate, legal uses of such devices.

It is undeniable that cell phones and other wireless devices are in widespread use and are important media for communication. "[P]agers and beepers are used to contact workers in the field in numerous businesses and

professions, and they enable parents or family members to be readily contacted if the need arises." (*In re Englebrecht* (1998) 67 Cal.App.4th 486, 498 [79 Cal.Rptr.2d 89] (*Englebrecht*).)

We cannot agree, however, that a cell phone ban for a juvenile delinquent unconstitutionally burdens his First Amendment rights. In *Englebrecht*, upon which Victor primarily relies, the district attorney brought a civil complaint for injunctive relief against members of a named street gang, alleging that they had created a public nuisance within a "Target Area" of Oceanside, where they engaged in violent crimes, sold illegal drugs, harassed residents, and created blight. (*Englebrecht, supra*, 67 Cal.App.4th at p. 489.) The superior court granted a preliminary injunction that prohibited 28 named gang members and 50 Doe defendants from engaging in a large range of activities within the Target Area, including associating with other known members of the gang, as well as the use or possession of pagers or beepers. (*Id.* at pp. 489, 490, fn. 3, 496.)

Englebrecht, a named defendant, was arrested in the Target Area after being spotted in the company of two other gang members. (*Englebrecht, supra*, 67 Cal.App.4th at p. 491.) When he was booked he was found in possession of a pager. He was subsequently found in contempt for violating the nonassociation provision and the pager ban of the injunction, and was sentenced to five days in jail, with a $1,000 fine. (*Ibid.*)

On appeal, Englebrecht argued that both provisions were unconstitutionally overbroad. While the court affirmed the propriety of the nonassociation provision, it held the pager and beeper prohibition was overbroad. Because mobile communication devices are commonly used for legitimate purposes, the court reasoned that any regulation of these modes of communication must be narrowly tailored to satisfy the First Amendment. (*Englebrecht, supra*, 67 Cal.App.4th at pp. 496–499.) It held that "an all-encompassing ban on pagers and beepers" in the Target Area, "includ[ing] those that may have a legitimate communication or informative function as well as those that do not," was "overbroad and infirm." (*Englebrecht, supra*, at pp. 497, 498.)

The court in *Englebrecht* was concerned with the proper scope of an injunction to abate a nuisance as enforced against adults, who may have had a need for mobile communication devices "both in the personal sense and professionally" (*Englebrecht, supra*, 67 Cal.App.4th at p. 498), whereas a minor does not ordinarily have a professional need for a cell phone or pager. Moreover, the injunction in *Englebrecht* targeted individuals who had not been convicted of any crime, most of whom were named solely as Doe defendants. (*Id.* at p. 489.) We deal instead with a term of probation tailored at least in theory to meet the needs of a juvenile offender who was found in

possession of an illegal weapon. In these circumstances, we think the reasoning of *Englebrecht* is of limited utility.

In placing a minor on probation, the juvenile court must consider not only the circumstance of the crime, but the minor's social history. (*Laylah K., supra*, 229 Cal.App.3d at p. 1500.) We will not strike down on a facial attack a juvenile court's restriction of access to cell phones and other wireless devices, which are recognized as tools of the trade for gang members and drug dealers and their customers. (See *People ex rel. Reisig v. Broderick Boys* (2007) 149 Cal.App.4th 1506, 1513 [59 Cal.Rptr.3d 64]; *Englebrecht, supra*, 67 Cal.App.4th at p. 498 [such devices "facilitate . . . gang drug sales" and "aid [gang] members in eluding arrest"].)

Of course, probation conditions that infringe on the exercise of a constitutional right must be narrowly tailored. (*Sheena K., supra*, 40 Cal.4th at p. 890; *O'Neil, supra*, 165 Cal.App.4th at p. 1356; *In re Luis F., supra*, 177 Cal.App.4th at p. 189.) We think, however, that the condition *was* narrowly tailored—within the context of juvenile probation—to prevent future crimes that might be committed as part of the criminal street gang culture.

The condition of probation does not prohibit Victor from possessing or using all communication devices or telephonic equipment. It prohibits him only from using portable devices, through which he might be tempted to communicate with gang members or engage in illegal activity. A restriction on the mode of communication is viewed more tolerantly than a restriction on content. (See *In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1035 [100 Cal.Rptr.2d 218] (*Antonio C.*).) Nor does the condition of probation unduly restrict Victor's First Amendment rights. Assuming he does not violate the nonassociation condition, he remains free to exercise his constitutional right of expression but must simply employ less sophisticated means, such as a landline phone, the mail, or in-person contact.

Victor asks us to modify the condition of probation so that he may keep his cell phone, but may not use it "for any unlawful purpose or to communicate with any person known by the Minor to be a member of any gang, [meaning a 'criminal street gang' as defined in Penal Code [s]ection 186.22 (f)] or with known gang members or associates or anyone he knows to be disapproved of by probation or [his] parent/guardian." He claims this narrowing of the restriction is necessary to protect his First Amendment rights. We are not persuaded.

The complete ban on portable devices serves a legitimate purpose in juvenile probation in that it is easier for parents, school officials, and the probation department to detect and supervise a youth's communications if his

or her access is limited to more conventional landlines, and to intervene when the use is improper. Due to the portability of wireless devices, and their popularity with young people as a means of communication, a complete ban was reasonably regarded by the juvenile court as a more effective means of deterring improper use. While possession is relatively easy to detect and prove, proving how the minor used the phone would be more difficult. There is no reason to believe the probation department has the resources to retrieve cell phone records and scrutinize them line by line to detect potentially prohibited contacts.

In addition, the court could legitimately have concluded, based on Victor's demonstrated susceptibility to the unhealthy influence of the Sureño gang, that placing the device in his hands while telling him how he may or may not use it would be too much temptation for him to resist. The court may have believed that Victor would be less likely to succeed on probation if a use limitation were imposed, rather than a strict ban on possession.

In fact, the instant probation condition is not an absolute prohibition of possession of such devices: there is an exception if the probation officer expressly permits the use or possession of the device. Thus, if Victor has a legitimate need for a cell phone in connection with work or school, he may ask his probation officer for permission to possess one.[13] We have no reason to believe that such permission would be arbitrarily or unreasonably withheld. If it were, Victor could apply to the court for a modification of the condition. (§ 778.)

Finally, the condition imposed is a standard "gang condition" contained on a preprinted form. If we were to strike down the condition as facially overbroad, we would invite wholesale attack on the probation condition in every case, even for those gang members as to whom it is unquestionably legitimate.[14] Our role in this appeal is to review the conditions of probation for facial constitutionality, not to micromanage how the juvenile court structures its probation conditions.

---

[13] Victor argues in his reply brief that he works at a restaurant and might need a cell phone to call his parents for a ride home from work. Besides taking the challenge beyond a facial one—a tack that has been forfeited by the failure to object below—this argument is weak. We presume his employer has a landline telephone that Victor could use to call his parents if necessary.

[14] If a defendant used a cell phone regularly to buy or sell illegal drugs, or to order or coordinate gang hits or otherwise conduct criminal gang activity, we see no reason why a court could not reasonably and constitutionally take the phone away.

## G. *Internet restrictions*

Victor also challenges three separate restrictions on Internet access on grounds that they are overbroad and internally inconsistent. The three provisions read as follows: (1) "The Minor shall not access or participate in any Social Networking Site, including but not limited to Myspace.com";[15] (2) "The Minor shall not use, possess or have access to a computer which is attached to a modem or telephonic device"; and (3) "The Minor shall not be on the Internet without school or parental supervision." The Attorney General admits that the second provision "literally forbid[s] access to any personal computer which has Internet access."

 Generally speaking, conditions of probation prohibiting Internet access have been upheld in cases that involved use of the Internet in the underlying crimes, such as child pornography cases. (See, e.g., *U.S. v. Paul* (5th Cir. 2001) 274 F.3d 155, 168–169.) Some of these have incorporated exceptions with the parole or probation officer's prior approval. (*U.S. v. Rearden* (9th Cir. 2003) 349 F.3d 608, 620–622; *U.S. v. Zinn* (11th Cir. 2003) 321 F.3d 1084, 1086–1087, 1092–1093; *U.S. v. Crandon* (3d Cir. 1999) 173 F.3d 122, 127–128.) Other such cases, however, have held a complete ban on Internet use to be overbroad, even in cases involving child pornography. (*U.S. v. Freeman* (3d Cir. 2003) 316 F.3d 386, 392; *U.S. v. Sofsky* (2d Cir. 2002) 287 F.3d 122, 126–127.) This was especially true if the defendant needed to use a computer in connection with his work. (*U.S. v. Mark* (8th Cir. 2005) 425 F.3d 505, 508–510 [Internet ban vacated where defendant was computer consultant and his offense involved simple possession]; *U.S. v. Peterson* (2d Cir. 2001) 248 F.3d 79, 83–84 [defendant owned a computer business and his past sex crimes did not involve use of the Internet]; *U.S. v. White* (10th Cir. 2001) 244 F.3d 1199, 1205–1207 [ban on possession of Internet-enabled computer was overbroad where defendant needed to do Internet research for a book he was writing]; cf. *U.S. v. Voelker* (3d Cir. 2007) 489 F.3d 139, 146–150 [lifetime ban on Internet access overbroad where it did not allow exception for employment or education].)

The courts seem most willing to condone a complete ban on Internet access if the defendant's conduct went beyond merely accessing child pornography, such as using the Internet to lure a minor into a sex act (*U.S. v. Crandon, supra*, 173 F.3d at p. 125), advocating or instructing others on how to access children for sex (*U.S. v. Paul, supra*, 274 F.3d at p. 168), or using the Internet to plan predatory or violent acts (*U.S. v. Rearden, supra*, 349 F.3d at pp. 611–612). (See generally *U.S. v. Love* (2010) 593 F.3d 1, 12; *U.S. v. Heckman* (3d Cir. 2010) 592 F.3d 400, 405–409; *U.S. v. Alvarez* (8th Cir.

---

[15] This condition continues: "All Internet usage is subject to monitoring by Probation, parents or school officials." Victor does not challenge the monitoring provision.

2007) 478 F.3d 864, 866–868; *U.S. v. Johnson* (2d Cir. 2006) 446 F.3d 272, 283; *U.S. v. Holm* (7th Cir. 2003) 326 F.3d 872, 877–879.)

The Attorney General argues that the complete ban on using Internet-enabled computers is supported by *People v. Harrisson* (2005) 134 Cal.App.4th 637 [36 Cal.Rptr.3d 264] (*Harrisson*). In that case, the adult defendant sent child pornography over the Internet and pled no contest to misdemeanor possession of child pornography. As a condition of probation, the defendant was ordered "not to have any access to the Internet or possess any Internet device." (*Id.* at pp. 639–640.) He subsequently told his therapist of a graphic plan to kill the prosecutor, and the therapist reported the threat. (*Id.* at p. 640.) A probation search revealed that the defendant had accessed the Internet to view adult pornography and to look for jobs. (*Ibid.*) Defendant argued that the Internet restriction substantially interfered with his ability to work because he was a digital technician. The court clarified that the condition of probation did not prohibit him from using a computer at work, so long as it was not connected to the Internet. (*Id.* at p. 641.) It did ban completely his possession or use of computers at his home. (*Ibid.*)

On appeal he argued that the condition of probation was unconstitutional and overbroad because it restricted his lawful use of the Internet, as well as unlawful use. (*Harrisson, supra,* 134 Cal.App.4th at pp. 641–642.) The Court of Appeal upheld the Internet ban because Harrisson had not only used the Internet to view child pornography, but also attempted to arrange a meeting with a 12-year-old girl for sexual purposes. In addition, his threats against the prosecutor and his violation of probation contributed to the court's conclusion that an outright ban on Internet access was lawful. (*Id.* at p. 647.)

*In re Stevens* (2004) 119 Cal.App.4th 1228 [15 Cal.Rptr.3d 168], on the other hand, held that a condition of parole which completely prohibited a paroled child molester from " 'possess[ing] or hav[ing] access to computer hardware or software including the internet' " was overbroad because the defendant's crime did not involve use of the Internet, and the condition of parole involved a greater deprivation of liberty than was required to achieve the goals of parole supervision. (*Id.* at pp. 1231, 1239; see also *U.S. v. Riley* (9th Cir. 2009) 576 F.3d 1046, 1048–1050 [although defendant's crime involved child pornography, condition of supervised release prohibiting him from using a computer to access " 'any material that relates to minors' " was overbroad under federal statute]; *U.S. v. Perazza-Mercado* (1st Cir. 2009) 553 F.3d 65, 69–74 [complete ban on Internet use at home was not narrowly tailored for offender whose crime did not involve use of computers].)

*In re Hudson* (2006) 143 Cal.App.4th 1, 10 [49 Cal.Rptr.3d 74], decided by Division One of this court, held that a paroled child molester who, while

earlier on probation had encrypted his computer so that its use could not be monitored by probation authorities, could be subjected to a condition of parole which prohibited access to the Internet except with prior permission from his parole officer.

As the foregoing summary shows, the courts are not altogether in agreement as to how far they may go in restricting adult access to the Internet, and have tended to reject complete Internet bans except in the most aggravated cases, unless they contain a clause allowing Internet access with prior approval of the supervising authority. (See generally *Validity of Condition of Probation, Supervised Release, or Parole Restricting Computer Use or Internet Access* (2005) 4 A.L.R.6th 1, 14.) However, the federal cases were not primarily decided on constitutional grounds, but only under a federal statute governing supervised release which requires that such a condition "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. (18 U.S.C. § 3583(d)(2).) Even on constitutional issues, we are not bound by federal circuit court decisions. (*In re Luis F., supra,* 177 Cal.App.4th at p. 185, fn. 7.) Finally, the foregoing cases involved adult offenders.

We emphasize again that juvenile courts have broader discretion in formulating conditions of probation for minors in order to guide them away from crime and violence. (*Sheena K., supra,* 40 Cal.4th at p. 889.) We are troubled here, however, not only by the complete ban on access to Internet-enabled computers, but also by the conflicting implications of the various Internet conditions. The second Internet condition prohibits all Internet usage, or even "access to" a computer with Internet capability, whereas the first and third conditions clearly contemplate that Victor would be allowed Internet access with certain limitations.

The Attorney General argues that the overlapping provisions create no problem of interpretation because "[t]o the extent the conditions overlap, the most restrictive prevails." We fail to see how this corrects the problem. The second Internet provision would literally prohibit Victor even from writing a term paper on the word processing program of a computer connected to a modem, regardless of whether he accessed the Internet or not. We agree with Victor that, in light of that condition, the first and third Internet conditions become either superfluous or contradictory.

It appears to us that the Internet provisions—part of a preprinted form— were intended to provide a graduated range of conditions restricting Internet access and were not intended to be checked off willy-nilly in all gang-related cases. The first provision is the least restrictive in that it does not ban computer or Internet access, but prohibits only the use of "social networking

sites" and *allows* (but does not require) monitoring of the minor's use of the Internet. The second condition, as discussed, is the most restrictive. The third provision imposes a medium level of restriction, allowing Internet access *only* under parental or school supervision. We believe the form calls for the probation officer and court to assess which level of Internet restriction is most appropriate for the minor in each case and to select the appropriate condition of probation accordingly.

Still, selection of more than one Internet condition does not necessarily invalidate the computer-related conditions in their entirety. The first and third Internet conditions (a) forbid Victor to access any social networking site, such as MySpace or Facebook, and (b) require all Internet access to be supervised. So interpreted, their overlap is neither incomprehensible nor contradictory. They limit Victor's access to the Internet in ways designed to minimize the temptation to contact his gang friends or to otherwise use the computer for illegal purposes by requiring adult supervision whenever he goes online.

The Attorney General argues that the second, and most restrictive, condition was intended to prevent Victor from using a friend's computer or secreting away an Internet-enabled computer of his own for unsupervised use. This is especially a concern with laptops or other portable computers, for the same reasons discussed above with respect to portable communications devices. Thus, to the extent the condition prohibits "possession" of an Internet-enabled computer, it remains enforceable as a separate condition of probation designed to discourage and separately enjoin a juvenile probationer's possession of an Internet-enabled computer for surreptitious use in contravention of the monitoring requirements and other restrictions on Internet access. It reasonably promotes enforceability of the other Internet conditions, as discussed with respect to portable communications devices.

However, to the extent the second Internet condition prohibits any "use of" or "access to" an Internet-enabled computer, we find it conflicts with the other two conditions, thereby making the combination of conditions unconstitutionally vague.[16] Indeed, the second Internet condition could ensnare a minor in a claimed probation violation even if he were engaged in completely innocent and legitimate use of a computer for scholarly or job-related purposes, and even if he were supervised by an adult during such use. For that reason, we will retain the condition prohibiting *possession* of an Internet-enabled computer, while striking the language prohibiting "access to" or "use of" such a computer. We therefore modify the second computer use condition to read as follows: "The Minor shall not . . . possess . . . a computer which is

---

[16] While we modify the second Internet condition in this case, we do not hold that it is invariably unconstitutional. Standing alone, it might well be appropriate in cases where the minor's offense involved improper use of the Internet.

attached to a modem or telephonic device [or which has an internal modem]."[17] We leave the first and third Internet conditions in place.

## H. Prohibition on acquiring future tattoos

Victor's final argument is that the condition of probation forbidding him to acquire "any new tattoos, brands, burns or voluntary scarring" is an overbroad restriction on his First Amendment freedom of expression. We disagree.

The leading case on tattoo conditions of juvenile probation is *Antonio C., supra,* 83 Cal.App.4th 1029. There, the Fifth District rejected a First Amendment challenge to a condition prohibiting the minor from acquiring any new tattoos. "Assuming, without deciding, that tattoos and related skin markings constitute speech under the First Amendment [citation], the probation condition does not unduly burden [the minor's] free speech rights. The United States Supreme Court has long held that while nonverbal expressive activity cannot be banned because of the ideas it expresses, it can be banned because of the action it entails. . . . Here, the probation condition, which is content neutral, temporarily prohibits [the minor] from self-expression through permanent skin disfigurement. Its focus is the manner in which the message is conveyed, not the message itself. As such, it constitutes a reasonable manner restriction on [the minor's] free speech rights. [Citation.]" (83 Cal.App.4th at p. 1035.)

*Antonio C.* held that "the state's compelling interest in the protection of children justifies the restriction on [the minor's] freedom of expression through body marking. [Citation.] As such, the condition does not unduly burden his free speech rights and was properly imposed." (*Antonio C., supra,* 83 Cal.App.4th at p. 1034.) *Antonio C.* went on to explain: "A minor is prohibited from receiving a permanent tattoo with or without parental consent. [Citations.] While we have found no statutory prohibition to a minor acquiring brands, burns, or voluntary scars, we note that inflicting brands, burns, or scars on another may constitute mayhem. [Citations.] And, branding, burning or voluntarily scarring oneself may constitute self-mutilation, which is an indication of emotional disturbance and presents a threat to the mutilator's health and safety. [Citations.]" (*Antonio C., supra,* at pp. 1034–1035.) In light of these factors, *Antonio C.* had no trouble holding

---

[17] Our modification also applies to computers with internal modems, a factor not taken into account in the form conditions. We will not, however, modify the conditions as requested by Victor because his proposed modification would (1) make supervision by parents and school officials permissive rather than mandatory, and (2) prohibit his access to social networking sites only for illegal purposes or for contacting gang members or other disapproved individuals.

that a juvenile court, as *parens patriae*, may prohibit a minor from acquiring new tattoos. (*Id.* at pp. 1034–1035.) The probation condition in *Antonio C.* also involved a prohibition on piercings, which the court held was unreasonable under the test of *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]. It modified the condition of probation, dictating that it should read: " 'the minor shall not obtain any new tattoos, brands, burns, or voluntary scarrings; he shall not obtain any piercings with gang significance or not in compliance with Penal Code section 652, subdivision (a) . . . .' "[18] (*Antonio C., supra*, 83 Cal.App.4th at p. 1036.) This language was adopted by the court below practically verbatim. We are reluctant to hold unconstitutional language which was specifically prescribed by another Court of Appeal.

Victor attempts to distinguish *Antonio C.* on the basis that he was 18 by the time he was placed on probation, and thus an adult whose acquisition of a tattoo would not violate Penal Code section 653. This argument itself requires us to review the record to determine his birth date. Because there was no objection to this condition in the trial court, the claim was forfeited.[19] We nevertheless exercise our discretion to address it on the merits in order to eliminate the need to address Victor's alternative ineffective assistance of counsel claim.

The Attorney General argues that the condition is valid because it forbids the acquisition only of tattoos with "gang significance." We do not so read the provision. The term "gang significance" appears in a separate sentence which relates only to body piercing, not tattoos. Still, we find the condition of probation is valid and does not unduly impair Victor's First Amendment rights.

The gist of Victor's argument appears to be that tattoo conditions of probation become unenforceable after the probationer reaches age 18 because California law does not prohibit the tattooing of a person over 18. (Pen. Code, § 653.) But he overemphasizes the role of the penal law in this context. We agree with the constitutional analysis of *Antonio C., supra*, 83 Cal.App.4th 1029, and conclude that the prohibition on acquiring tattoos while on juvenile probation is a proper condition for gang members or those at risk of becoming gang members, regardless of their age, so long as they remain under the juvenile court's jurisdiction.

---

[18] The condition in this case also prohibited gang-related eyebrow or head shaving. Penal Code section 652, subdivision (a) allows body piercing of minors with parental consent; subdivision (c) exempts ear piercing from the scope of subdivision (a).

[19] To avoid the forfeiture rule, a challenge to a condition of probation must be one that can be resolved without reference to the sentencing record. (*Sheena K., supra*, 40 Cal.4th at pp. 889–890.) Victor acknowledges that the sixth condition does require a "quick reference" to the record.

To the extent Victor claims that his age exempts him from juvenile court jurisdiction, he is incorrect. Victor was under age 18 when he committed his offense (§ 602, subd. (a); *Rucker v. Superior Court* (1977) 75 Cal.App.3d 197, 200 [141 Cal.Rptr. 900]), and the court's retention of jurisdiction after he reached majority age was proper (§ 607, subd. (a); *In re Maria A.* (1975) 52 Cal.App.3d 901, 903–904 [125 Cal.Rptr. 382]).

Comparing Penal Code sections 652 and 653 shows that the law tolerates body piercing more readily than it does tattoos, as it is lawful for a minor to have body parts pierced with parental consent. (Pen. Code, § 652, subd. (a).) The permanency of tattoos may have influenced that policy. In any event, the law is not aimed at punishing a minor for either body piercing or acquiring a tattoo, but rather penalizes the one who performs the tattooing or piercing. Thus, its objective is to protect the minor from a painful process that he or she may regret in the future. Just because it is lawful for an 18 year old to get a tattoo does not mean it is wise.

The self-mutilation and other health aspects alone are sufficient to allow a court to impose a ban on new tattoos in the ward's best interests. Tattooing is viewed by some mental health professionals as a form of self-injury that has been associated with dangerous and sometimes lethal risk-taking behavior, substance abuse, and violence.[20] In addition, some studies suggest that tattooing may contribute to the spread of serious disease, especially hepatitis C.[21]

Tattoos are also commonly worn by gang members to show gang affiliation. (See, e.g., *People v. Medina* (2009) 46 Cal.4th 913, 918 [95 Cal.Rptr.3d

---

[20] See Silver et al., *Tattoo Acquisition: A Prospective Longitudinal Study of Adolescents* (Aug. 2009) volume 30, No. 6, Deviant Behavior 511, 512, 514, 525–527; Roberts and Ryan, *Tattooing and High-Risk Behavior in Adolescents* (Dec. 2002) volume 110, No. 6, Pediatrics 1058, 1060–1061; Carroll et al., *Tattoos and Body Piercings as Indicators of Adolescent Risk-Taking Behaviors* (June 2002) volume 109, No. 6, Pediatrics 1021, 1025–1026; Ceniceros, *Tattooing, Body Piercing, and Russian Roulette* (Aug. 1998) volume 186, No. 8, Journal of Nervous and Mental Disease 503–504.

Other researchers question this theory. (Preti et al., *Body of Evidence: Tattoos, Body Piercing, and Eating Disorder Symptoms Among Adolescents* (Oct. 2006) vol. 61, No. 4, J. Psychosomatic Research 561, 565; Frederick and Bradley, *A Different Kind of Normal? Psychological and Motivational Characteristics of Tattooers and Body Piercers* (2000) vol. 2, No. 2, North American J. Psychology 379, 380, 388–389; Martin, *On Teenagers and Tattoos* (June 1997) vol. 36, No. 6, J. Am. Acad. Child Adolesc. Psychiatry 860–861.)

[21] Haley and Fischer, *Commercial Tattooing as a Potentially Important Source of Hepatitis C Infection: Clinical Epidemiology of 626 Consecutive Patients Unaware of Their Hepatitis C Serologic Status* (Mar. 2001) volume 80, No. 2, Medicine 134, 137–138, 141–142, 148; Nishioka et al., *Tattooing and Transfusion-Transmitted Diseases in Brazil: A Hospital-Based Cross-Sectional Matched Study* (May 2003) volume 18, No. 5, European Journal of Epidemiology 381, 441, 443–446.

202, 209 P.3d 105]; *People v. Gonzalez* (2006) 38 Cal.4th 932, 938 [44 Cal.Rptr.3d 237, 135 P.3d 649]; *People v. Ochoa* (2001) 26 Cal.4th 398, 438–439 [110 Cal.Rptr.2d 324, 28 P.3d 78].) Whether tattoos are gang related or not, a heavily tattooed appearance tends to give rise to prejudices or suspicions about the tattooed person—warranted or not—that could interfere with a ward's future aspirations, such as employment opportunities. Thus, the prohibition on tattoos tends to steer wards away from gang appearance, gang identity, and the social stigma sometimes attached to tattoos.

Victor asks us to modify the condition to prohibit acquisition only of tattoos "with gang significance." But gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos. (See *People v. Rubio* (2004) 121 Cal.App.4th 927, 929–930 [17 Cal.Rptr.3d 524] [tattoo of three dots signified gang affiliation].) Thus, a complete ban on new tattoos enhances the enforceability of the condition.

These factors make the tattoo ban part of a program of reform and rehabilitation which is authorized under section 730. The probation condition precluding the acquisition of all tattoos for the remainder of Victor's probationary period is not overbroad. If Victor wishes to obtain tattoos in the future, he will have time to do so after he successfully completes probation and has gained a little more maturity.

We conclude with two observations, one for the benefit of the trial court, one for the benefit of Victor. First, we understand the utility of preprinted forms containing various possible conditions of probation, which the court may simply check off in determining which conditions to impose in a given case, which forms were used here. However, thought must be given in each case to the specific language of the condition, the particular offense, and the background of the juvenile, so that the conditions are internally consistent, reasonably clear, and closely tailored to the rehabilitative needs of the individual before the court. As indicated in the California Judges Benchguides, Benchguide 119, Juvenile Delinquency Disposition Hearing (CJER 2009) section 119.2(10), page 119-7, "If granting probation, [the court should] formulate conditions related to the child's situation and offense." (Italics omitted.) In the final analysis, "the court alone is empowered to determine the propriety of the proposed conditions and their applicability to the individual offender." (*In re Pedro Q., supra*, 209 Cal.App.3d at p. 1373.)

*In re White, supra*, 97 Cal.App.3d 141, cautioned long ago, that "Probation by its very nature is intended to be tailored to the needs of society and the individual defendant. Unlike the purpose of imprisonment which is punishment, the purpose of probation is rehabilitation. The manifest goals of probation and the need for individualistic treatment compels the imposition of

special probation conditions framed to meet the particular needs of each individual case. Particularized conditions of probation should be directed toward rehabilitation rather than reliance upon some general condition which utilizes a mechanized mass treatment approach." (*Id.* at pp. 150–151.)

So, as tempting as it may be to rely on the probation officer's recommendation of standardized conditions of probation intended to deter gang involvement or to address other social ills, the court must carefully scrutinize the probation conditions contained on the form, not only to determine whether they truly are appropriate for the juvenile in question, but also to address any ambiguity, overbreadth, or logical inconsistency that may exist in the form itself. To rubberstamp too readily the probation officer's recommendation is to abdicate the judicial function entrusted to the court, and to potentially fall prey to a "mechanized mass treatment approach" to probation that is antithetical to our individualized system of justice.

Finally, we acknowledge several positive factors contained in the record with respect to Victor's future prospects. For instance, he was cooperative and respectful with probation personnel and satisfactorily completed electronic monitoring, clearing his system of drugs in response to drug testing. He worked 30 hours per week while attending high school and helped pay his family's rent and utilities, accepting this as part of his responsibility within the family. He also volunteered on his own initiative for approximately two years, serving food on a daily basis to those in need at Samaritan House of San Mateo. And he expressed remorse after his current detention for letting his parents down. We hope that the admittedly stringent conditions of probation help Victor to focus on, and nurture, those more admirable attributes of his character, so that this juvenile offense will prove to be the "wakeup" call that his family hoped it would be—and not a prelude to further criminal conduct.

## DISPOSITION

The first condition of probation is modified to read, "The Minor shall not be a member of any gang, [meaning a 'criminal street gang' as defined in Penal Code Section 186.22(f)], nor associate with any person known by the Minor to be a gang member, or with anyone with whom *the Minor knows* a parent or the Probation Officer prohibits association." The second condition of probation is modified to read, "The Minor shall not remain in any building, vehicle or in the presence of any person where *the Minor knows one or more* dangerous or deadly weapons or firearms or ammunition exist." The third condition of probation is modified to read, "The Minor shall not be in any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity *(or specified by his probation*

*officer as involving gang-related activity)*, nor *shall he* participate in any gang activity." We modify the second Internet condition to read, "The Minor shall not *possess* a computer which is attached to a modem or telephonic device *or which has an internal modem*." In all other respects the judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.