Filed 8/21/14  P. v. Morones CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER JAMES MORONES,<br><br>  Defendant and Appellant. | H039945<br>(Monterey County<br>Super. Ct. No. SSC130100A) |

Pursuant to a negotiated disposition, Christopher James Morones (appellant) pleaded no contest to one count of inflicting corporal injury on a cohabitant or former cohabitant.  (Pen. Code, § 273.5, subd. (a).)

On July 9, 2013, the court suspended imposition of sentence and admitted appellant to probation on various terms and conditions, two of which are the subject of this appeal.  Appellant filed a timely notice of appeal on July 24, 2013.

### Facts and Proceedings Below[1]

On the morning of January 21, 2013, Jane Doe, the mother of appellant's autistic child, called the police.  She told the police that appellant had come to her residence the previous evening; he wanted to resume their relationship.  When Doe refused, appellant pushed her onto the couch; then, he punched her twice on the right side of her face.  Doe told the police that she had dated appellant for approximately six years and that they had a child together.  The police searched for appellant but were unable to locate him.

---

[1]  Since appellant resolved this case by entering a plea we take the facts from the probation officer's report, but summarize them.  The facts are not in dispute.

Subsequently, on April 8, 2013, the police located appellant; he was looking through the front window of a home. A police officer suspected that appellant was planning a burglary. The officer stopped appellant. Appellant was carrying a plastic bag that contained several beers. The officer pat-searched appellant because he was wearing "voluminous clothing"; the officer saw that appellant had his left hand clenched in a fist, which he would not release. As a result, appellant was detained and placed in handcuffs. Later the officer determined that appellant possessed a small plastic bindle of methamphetamine located inside his left glove. Appellant claimed that the methamphetamine was not his. He said that someone threatened him that they would " 'jump his ass,' " if he did not take the drugs and deliver them to "his cousin." Appellant described the person that threatened him as a "gangster" with a tattoo of a " 'Huelga Bird,' a known tattoo associated with the Norteno criminal street gang . . . ."

At appellant's sentencing hearing, defense counsel objected to probation condition Nos. 9, 10, and 11, which contained references to alcohol, on the ground that there was no nexus to the underlying crime; and to condition Nos. 24 through 27 on the ground that there was no nexus between gang activity and appellant's offenses. Relevant to this appeal, the court imposed the following conditions, which are designated condition Nos. 24 and 26 in the probation officer's report:

"You are not to have access to, use, or possess any police scanner device or surveillance equipment on your person, vehicle, place of residence, or personal effects."

"You are not to own [*sic*] any new tattooing on your person while on probation supervision. And you shall permit photographing of any tattoos on your person by law enforcement."[2]

---

[2] As written in the probation officer's report this condition reads, "Do not obtain any new tattooing upon your person while on probation supervision. You shall permit photographing of any tattoos on your person by law enforcement."

The court struck condition No. 9, which had stated that appellant was to "Totally abstain from the use of alcoholic beverages, not purchase or possess alcoholic beverages, and stay out of places where you know alcohol is the main item of sale."  In addition, the court struck any reference to alcohol in condition Nos. 10 and 11.[3]

Appellant contends that condition Nos. 24 and 26 are so vague and overbroad as to render them unconstitutional.  Appellant requests that we strike or modify the conditions. In addition, appellant asserts that the sentencing minutes contain an error that must be corrected, because the minute order mistakenly includes condition No. 9, which the court struck.

*Discussion*

*Possession of Surveillance Equipment*

Appellant contends that condition No. 24, which requires that he not have access to, or use, or possess any police scanner device or surveillance equipment, is unconstitutionally vague.  We disagree.

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a [constitutional] challenge on the ground of vagueness.  [Citation.]"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the

---

[3]  Condition No. 10 as written in the probation officer's report reads as follows:  "Not use or possess alcohol, intoxicants, or controlled substances without the prescription of a physician; not traffic in, or associate with persons you know, or have reason to know, use, or traffic in controlled substances."  Condition No. 11 reads as follows:  "Submit to and complete any field sobriety test or alcohol/narcotics testing of your blood, breath, or urine at the request of any probation officer or law enforcement officer."  A line appears through the word alcohol in both conditions.

3

federal and California Constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7).' [Citation.] The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.]" [Citation.] A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation.]' [Citation.] In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' [Citation.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

Appellant argues that there is no agreed upon meaning with respect to the term "surveillance equipment" and as such the term is vague. He contends that an objective reader of the condition could reasonably find it to include anything from a pair of opera glasses to a home security system. Thus, he could violate the condition if he were found with a pair of binoculars, a digital camera or video camera, a smart phone with an audio recording application, or even a " 'nanny cam' " used to monitor a sleeping baby.

We agree with appellant that all the aforementioned things could be considered surveillance equipment. However, that does not make the term "surveillance equipment" void for vagueness. Surveillance equipment is sufficiently identifiable (as appellant has just demonstrated) as to not require appellant to guess at the probation condition's meaning. In other words, the term "surveillance equipment" may be all encompassing, but that does not make the term vague.

Nevertheless, the probation condition in this case involves use of, access to, and possession of specific items of property that are otherwise legal and for which there exist

no statutes proscribing their possession.[4]  Thus, to the extent that it restricts ownership and possession of property, the condition impacts the constitutional right to possess property.  (Cal. Const., art. I, § 1; see *People v. Freitas* (2009) 179 Cal.App.4th 747, 751.)  "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.  [Citation.]"  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

Moreover, even if appellant knows *which* items are off-limits to him, the requirement that he not have access to them must include knowledge.

In multiple cases, probation conditions have been invalidated where they failed to include language requiring the probationer's knowing violation of the condition.  (*People v. Garcia* (1993) 19 Cal.App.4th 97, 102; *People v. Leon* (2010) 181 Cal.App.4th 943, 949-950 (*Leon*); *People v. Freitas*, *supra*, 179 Cal.App.4th at pp. 751-752; *People v. Moses* (2011) 199 Cal.App.4th 374, 377.)

Here, the probation condition prohibiting access to, use of, or possession of police scanners or surveillance equipment—similar to the probation conditions in the many cases cited *ante* that courts have found to be infirm—has no express requirement that appellant have knowledge of the presence of such equipment.  Thus, as the condition is worded, appellant's unknowing access to a police scanner or surveillance equipment could constitute a probation violation.  Similar to probation conditions that prohibit possession of gang paraphernalia without an express knowledge requirement (*Leon*, *supra*, 181 Cal.App.4th at p. 951; *In re Vincent G.* (2008) 162 Cal.App.4th 245), the prohibition against having access to or possessing police scanners or surveillance

---

[4]  We acknowledge, however, that there is at least one statute that criminalizes a specific use of a police scanner.  (See Pen. Code, § 636.5 [making it a misdemeanor for an unauthorized person to intercept any public safety radio service communication, by use of a scanner or any other means to assist the perpetrator of a crime in committing the offense or evading law enforcement].)

equipment without inclusion of an element that appellant knowingly do so is constitutionally infirm. (*Sheena K.*, *supra*, 40 Cal.4th at p. 891.) Therefore, to avoid any overbreadth in condition No. 24 we will modify the condition to read: You are not to knowingly have access to, use, or possess any police scanner device or surveillance equipment that you intend to use to monitor the police, whether on your person, in your vehicle, at your place of residence, or among your personal effects.

*New Tattoos*

As noted, condition No. 26 requires that appellant not obtain any new tattoos while he is on probation. Appellant contends that the condition is unconstitutionally overbroad because it applies to *all* tattoos, not merely gang-related ones, thus violating his constitutional free speech rights.[5] He argues that the condition is not narrowly tailored to prohibit only gang-related tattoos because it prevents him from getting any kind of tattoo while on probation including "his son's name, a religious figure such as the Virgin Mary, or a political statement such as 'End NSA snooping.' "

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121.) Reasonable probation conditions may infringe upon constitutional rights provided they are narrowly tailored to achieve those legitimate purposes. (*People v. Olguin* (2008) 45 Cal.4th 375, 384 (*Olguin*); *Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "[P]robation is a privilege and not a right, and . . . adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . ." (*Olguin*, *supra*, at p. 384.)

In *In re Antonio C.* (2000) 83 Cal.App.4th 1029 (*Antonio C.*), the Fifth District Court of Appeal upheld a probation condition barring a 15-year-old from obtaining *any* new tattoos. The court reasoned that since minors are prohibited from obtaining

---

5       Appellant concedes for the sake of argument that the governmental interest underlying the condition is to limit criminal activity by gangs.

permanent tattoos with or without parental consent (Pen. Code, § 653),[6] the challenged condition was analogous to the condition requiring him to obey all laws. (*Antonio C.*, *supra*, at p. 1035.) The court explained, "the condition is sufficiently related to his rehabilitation, and is a reasonable exercise of the juvenile court's supervisory function to provide for his safety and protection." (*Ibid.*) The court rejected the minor's argument that the condition infringed on his constitutional right to free speech. The court stated, "Assuming, without deciding, that tattoos and related skin markings constitute speech under the First Amendment [citation], the probation condition does not unduly burden Antonio's free speech rights. The United States Supreme Court has long held that while nonverbal expressive activity cannot be banned because of the ideas it expresses, it can be banned because of the action it entails. For example, burning a flag in violation of an ordinance against outdoor fires may be punished, whereas burning a flag in violation of an ordinance against dishonoring a flag may not. [Citation.] Here, the probation condition, which is content neutral, temporarily prohibits Antonio from self-expression through permanent skin disfigurement. Its focus is the manner in which the message is conveyed, not the message itself. As such, it constitutes a reasonable manner restriction on Antonio's free speech rights." (*Ibid.*)

*In re Victor L.* (2010) 182 Cal.App.4th 902 (*Victor L.*), the First District Court of Appeal upheld a probation condition prohibiting an 18-year-old from obtaining any new tattoos, noting that the language of the challenged condition was almost identical to the language of the condition the *Antonio C.* court had approved. (*Id.* at p. 908.) That court stated that it was "reluctant to hold unconstitutional language which was specifically prescribed by another Court of Appeal." (*Id.* at p. 928.)

Appellant attempts to distinguish *Antonio C.* and *Victor L.* on the ground that both cases involved juveniles. The court rejected an age-related argument in *Victor L.*

---

[6] Penal Code section 653 provides in pertinent part that "[e]very person who tattoos or offers to tattoo a person under the age of 18 years is guilty of a misdemeanor."

"The gist of Victor's argument appears to be that tattoo conditions of probation become unenforceable after the probationer reaches age 18 because California law does not prohibit the tattooing of a person over 18. [Citation.] But he overemphasizes the role of the penal law in this context. We agree with the constitutional analysis of *Antonio C. . . .* and conclude that the prohibition on acquiring tattoos while on juvenile probation is a proper condition for gang members or those at risk of becoming gang members, regardless of their age, so long as they remain under the juvenile court's jurisdiction." (*Victor L.*, *supra*, 182 Cal.App.4th at p. 928.)

The *Victor L.* court observed, "[j]ust because it is lawful for an 18 year old to get a tattoo does not mean it is wise," the court refused to modify the condition by limiting its prohibition to the acquisition of new tattoos " 'with gang significance.' " (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 929-930.) The court did so for two reasons. First, "[t]attoos are . . . commonly worn by gang members to show gang affiliation. [Citations.] Whether tattoos are gang related or not, a heavily tattooed appearance tends to give rise to prejudices or suspicions about the tattooed person—warranted or not—that could interfere with a ward's future aspirations, such as employment opportunities. Thus, the prohibition on tattoos tends to steer wards away from gang appearance, gang identity, and the social stigma sometimes attached to tattoos." (*Ibid.*)

Second, "gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos. [Citation.] Thus, a complete ban on new tattoos enhances the enforceability of the condition." (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 929-930.) Since these factors made the tattoo ban part of a program of reform and rehabilitation, the total ban on new tattoos "for the remainder of Victor's probationary period [wa]s not overbroad." (*Id.* at p. 930.)

We find the reasoning of *Antonio C.* and *Victor L.* persuasive—particularly the observation in *Victor L.* that gang tattoos may employ obscure symbols not readily recognized or catalogued as gang tattoos. Having dealt with numerous gang-related cases

8

over the years, we observe that in this court's experience the significance of tattoos can change over time, making something as innocuous as the tattoo of a religious figure or the logo of a sports team into something more sinister if adopted by a particular gang as one of their symbols.

Although appellant is not a minor, we believe a content-neutral prohibition on acquiring new tattoos is a proper condition for adult gang members[7] while on probation under the superior court's jurisdiction. "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citations.]" (*U.S. v. Knights* (2001) 534 U.S. 112, 119.) Accordingly, we conclude that the ban on appellant's acquiring new tattoos (condition No. 24) requires no modification.

*Correction of the Minute Order from the Sentencing Hearing*

As noted *ante*, at the sentencing hearing the court did not orally impose condition No. 9. However, the minute order from the sentencing hearing includes condition No. 9. Appellant requests that the minute order be brought into conformity with the court's oral pronouncement.

It has long been held that where there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. (*People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*).) On the other hand, a record that is in conflict will be harmonized if possible. (*People v. Smith* (1983) 33 Cal.3d 596, 599 (*Smith*); *People v. Harrison* (2005) 35 Cal.4th 208, 226.) If it cannot be harmonized, whether one portion of the record

---

[7] According to the probation officer's report, appellant identified himself as an active member of the Norteño criminal street gang when he was booked into the Monterey County jail on April 8, 2013. He was housed in "K" Pod at the jail, a dormitory populated exclusively by Norteño criminal street gang members or their associates. Appellant's tattoos include "VGN," which stands for Varios Greenfield Norte, "674," four dots on his left elbow, and one dot on his right elbow. Most of appellant's friends are involved in criminal street gangs.

9

should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case.  (*Smith*, *supra*, at p. 599.)

In this case, there is no indication that Judge Iglesia intended the signed minute order to modify his in-court recitation of the probation conditions he wished to impose in this case.  In light of his pronouncement that "Paragraph 9 is deleted" we give more credence to the oral pronouncement of judgment; we deem the discrepancy in the sentencing minutes to be the result of clerical error.  (*Mitchell*, *supra*, 26 Cal.4th at p. 185.)  Accordingly, we will send this case back to the trial court to correct the court minutes.

## *Disposition*

Probation condition No. 24 is modified to read, "You are not to knowingly have access to, use, or possess any police scanner device or surveillance equipment that you intend to use to monitor the police, whether on your person, in your vehicle, at your place of residence, or among your personal effects."  The case is remanded to the trial court to correct the sentencing minutes with respect to condition No. 9.  As modified, the judgment is affirmed.

10

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P. J.


_____

MIHARA, J.