Filed 2/27/15  In re Alexander T. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Alexander T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER T.,<br><br>        Defendant and Appellant. | A136173<br><br>(Napa County Super. Ct. No. JV16982) |

Alexander T., a minor, appeals from an order of wardship entered pursuant to Welfare and Institutions Code section 602, subdivision (a), following the juvenile court's finding that he committed felony forcible rape (Pen. Code, § 261, subd. (a)(2)). Alexander contends on appeal that the juvenile court erroneously imposed four conditions of probation that are unconstitutionally vague or overbroad and/or unreasonable under the standard articulated by the California Supreme Court in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), abrogated by Proposition 8 on another ground as explained in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-292.  The People concede that two of the probation conditions at issue may properly be modified.  We agree and modify those probation conditions, but otherwise affirm the judgment.

1

# I. BACKGROUND

Alexander T.'s parents were never married. He lived primarily with his mother, and had no real contact with his father until he was nine years old. Jane Doe is the adoptive daughter of father and father's ex-wife.[1] Jane is the biological child of father's cousin. Father and his then-wife agreed to adopt Jane because the cousin was going to prison and could not care for her. Thus, Jane is both Alexander's biological cousin and his adoptive half-sister, a family relationship that father explained to Alexander and Jane. The two minors, however, were never raised as siblings in the same household. Rather, after father and his wife divorced, Jane lived primarily with her adoptive mother while Alexander continued to reside in the home of his mother. Alexander and Jane met for the first time in the summer of 2009 and saw each other only when they visited their father. Both described their relationship as that of a brother and sister.

In December 2010, Jane was 14 years old and Alexander was 15 years old. At that time, Jane visited with her father every Monday, Tuesday, and the third Sunday of each month. Alexander also visited father on certain Mondays and Tuesdays, sometimes spending the night on the couch. He estimated that between December 2010 and the first time he met Jane, they saw each other at their father's house approximately 15 to 20 times.

According to Jane, both she and Alexander were visiting the home of their father on December 6, 2010, a Monday. After picking Jane up from school, father went to work, leaving both minors with his girlfriend. Jane reported doing her homework and spending some time watching television and "hanging out" with Alexander before having dinner. Thereafter, she watched more television and then went to bed at approximately 9:30 p.m., closing her bedroom door. Around 10:00 p.m., she overheard father's girlfriend tell Alexander that she was going to pick up father at work. Shortly thereafter, Alexander entered Jane's bedroom uninvited, pushed her down on the bed, pinned down her arms, and covered her mouth when she started to cry. Despite her attempts to "get

_____

[1] We refer to the victim in this matter as Jane Doe, both to protect her privacy and because the use of her first name or initials in this particular case might cause confusion.

him off of me," Alexander forcibly raped her. He did not use a condom and ejaculated in her vagina. Afterwards, Jane was able to push Alexander out of her room. As he left, he told Jane "not to say anything." After the incident, Jane needed a sanitary pad to stem her vaginal bleeding.

Initially, Jane did not tell anyone what happened that night, stating that she did not like "getting in trouble" and was "scared." However, on December 31, 2010, Jane finally did disclose to her mother that she had been sexually assaulted by Alexander. When confronted by his father and Jane's mother the next day, Alexander denied raping his half-sister. Alexander was also interviewed at the Napa Police Department on January 1, 2011. Again, he denied the sexual assault and maintained that there would be no DNA evidence that could tie him to the alleged incident. On February 17, 2011—while providing a DNA sample—Alexander continued to deny any sexual contact with Jane. However, in October 2011, DNA analysis confirmed Alexander as the source of the semen stains found on the shorts Jane wore on the night of the rape.

On January 3, 2012, the Napa County District Attorney's office (District Attorney) filed a wardship petition pursuant to section 602 of the Welfare and Institutions Code alleging that Alexander had forcibly raped Jane in violation of Penal Code section 261, subdivision (a)(2). At the initial hearing in this matter on January 23, 2012, Alexander was ordered to stay at least 100 yards away from Jane and have no contact with her through "phone calls, text messages, emails, Facebook contacts" or otherwise. After a number of continuances, a contested jurisdictional hearing was held on May 15, 2012.

At the contested hearing, Jane testified that the rape occurred on December 6, 2010, as previously described. Alexander, in contrast, testified that he did not rape Jane. Although he admitted for the first time that the two minors had engaged in sexual activity on December 6, Alexander claimed that Jane had initiated the sexual contact and that he was just a passive participant. Alexander further testified that he had previously lied to both his family and to the investigating officer about the circumstances of the case. At the conclusion of the hearing, the juvenile court sustained the allegation of forcible rape, finding Jane's version of events to be the more consistent and credible.

3

A dispositional hearing was held on July 9, 2012, at which the District Attorney requested that Alexander be committed to the Department of Juvenile Justice (formerly known as the California Youth Authority) due to the severity of his offense. Probation, in contrast, recommended out-of-home placement for the minor in a residential program offering sex offender treatment. Finally, Alexander's attorney argued in favor of in-home placement and services.

Numerous letters were submitted in support of Alexander, attesting to his good character, his academic achievement, and his many community-based activities such as 4-H, tutoring, and peer court. Indeed, the juvenile court acknowledged that it had not "seen anything negative about Alex except this act he performed on [Jane] on this day." In addition, assessment tools used by Probation indicated that Alexander's overall risk for reoffense was low. However, Alexander continued to deny that he had sexually assaulted Jane, submitting a letter to the court stating: "I'm sorry Judge Stone did not believe in what I had to say." Ultimately, indicating that it did not find Alexander credible and concerned about the severity of the offense and the minor's lack of remorse, the juvenile court adjudged the minor a ward and removed him from his mother's home, with contemplated placement to be in a residential treatment program. In addition, the juvenile court imposed numerous conditions of probation, including the requirement that Alexander engage in sex offender treatment.

Among the other probation conditions imposed, the juvenile court ordered Alexander to comply with the following restrictions.

> Condition No. 19: "The minor shall disclose to the minor's probation officer all electronic mail accounts, all Internet accounts, and any other means of access to any computer or computer network, all passwords and access codes. The minor shall consent to the search of that electronic mail and Internet accounts, and any computer system at any time and the seizure of any information or data contained therein without a search warrant or probable cause" (Condition 19);

> Condition No. 26: "The minor remain away from all children under the age of 14 unless supervised by a responsible adult over the age of 21, who is aware the minor is on probation for a sexual offense. Further, all contact must have prior approval by the probation officer and treatment provider.

4

The minor must notify the probation officer and treatment provider immediately if incidental contact with children from whom the minor is restricted occurs and immediately remove himself from the situation in a safe and responsible manner" (Condition 26);

Condition No. 30: "The minor shall not own, use, or possess any form of sexually arousing materials which include computer based movies, videos, magazines, books, games, sexual aids or devices, or any material which depicts partial or complete nudity or sexually explicit language, nor frequent any establishment where such items are the primary commodity for sale" (Condition 30); and

Condition No. 31: "The minor is prohibited from participating in chat rooms, using instant messaging, Internet Chat Query (ICQ), or other similar communication programs" (Condition 31).

The juvenile court then continued the matter to January 9, 2013, for a pre-permanency review.[2] Thereafter, a timely notice of appeal brought the case before this court. The only issues on appeal involve the validity of the four conditions of probation set forth above: Conditions 19, 26, 30, and 31.

## II. CONDITIONS OF PROBATION

Pursuant to Welfare and Institutions Code section 730, subdivision (b), the juvenile court, in placing a ward on probation, "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) When fashioning appropriate conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the offense charged. (*In re Walter P.* (2009) 170 Cal.App.4th 95, 100.) The juvenile court's discretion in this area is quite broad. (*Sheena K.*, *supra*, 40

---

[2] By order dated March 5, 2013, we granted Alexander's request to augment the record in this matter to include the post-dispositional materials presented at the January 9 review hearing. According to the report prepared by Probation for that hearing, Alexander was actively engaged in his residential treatment program, was taking responsibility for his actions, and had been able to admit that he raped Jane. Moreover, at the January 9 hearing, itself, Alexander stated that he did rape his half-sister and that "[i]t was never her fault."

5

Cal.4th at p. 889.) Indeed, the permissible scope of the juvenile court's discretion in formulating the terms of a minor's probation is greater than that allowed for adult probationers "[b]ecause wards are thought to be more in need of guidance and supervision than adults and have more circumscribed constitutional rights, and because the juvenile court stands in the shoes of a parent when it asserts jurisdiction over a minor." (*In re D.G.* (2010) 187 Cal.App.4th 47, 52 (*D.G.*).) Thus, a probation condition " 'that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.) Generally, we review the juvenile court's imposition of probation conditions for abuse of discretion. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143 (*Shaun R.*).)

Of course, the leeway afforded the juvenile court in this area is not absolute. Under an analysis commonly known as the *Lent* test, a probation condition must be stricken as unreasonable if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent*, *supra*, 15 Cal.3d at p. 486; see *D.G.*, *supra*, 187 Cal.App.4th at pp. 52-53 [noting application of *Lent* test to juvenile proceedings despite differences between adult and juvenile probationers]; see *People v. Olguin* (2008) 45 Cal.4th 375, 379-380 [referencing *Lent* test]; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 246 [same] (*Vincent G.*) .) Put another way, " a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*D.G.*, *supra*, 187 Cal.App.4th at pp. 52-53 [quoting *Lent*].)

In addition, a juvenile court must not adopt probation conditions that are constitutionally vague or overbroad. (*Sheena K.*, *supra*, 40 Cal.4th at pp. 889-891; see *In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) In order to withstand a vagueness challenge, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the

condition has been violated.' " (*Sheena K.*, *supra,* 40 Cal.4th at p. 890.)  A challenge for vagueness is grounded in due process notions of " 'fair warning.' " (*Ibid.*)  Thus, while the language of the probation condition must have " ' "*reasonable* specificity," ' " it need not admit of " 'mathematical certainty.' " (*Ibid.*)

An overbreadth challenge, on the other hand, is "conceptually quite distinct" from an objection on vagueness grounds.  (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 (*E.O.*).)  Specifically, a probation condition is unconstitutionally overbroad if it imposes limitations on a person's constitutional rights which are not closely tailored to the purpose of the condition.  (*Sheena K.*, *supra,* 40 Cal.4th at p. 890; see also *In re Victor L.*, *supra*, 182 Cal.App.4th at p. 910 ["the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation"].)  "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*E.O.*, *supra*, 188 Cal.App.4th at p. 1153.)

Our review of such constitutional challenges is de novo.  (*Shaun R.*, *supra*, 188 Cal.App.4th at p. 1143.)  Moreover, in an appropriate case, a probation condition that is not sufficiently precise or narrowly drawn may be modified in this court and affirmed as modified.  (See, e.g., *Sheena K.*, *supra,* 40 Cal.4th  at p. 892; *People v. Lopez* (1998) 66 Cal.App.4th 615, 629.)

Finally, any appellate review of conditions of probation must take into account the doctrine of forfeiture.  "While an appellate court may invalidate a legally defective probation condition, even without a timely objection, ordinarily objections to inapplicable or unreasonable conditions must be timely made in the trial court." (*In re Sean A.* (2010) 191 Cal.App.4th 182, 190.)  Specifically, in *People v. Welch* (1993) 5 Cal.4th 228 (*Welch*), our Supreme Court announced the prospective rule that forfeiture applies to an appellant's claim that a probation condition is unreasonable under *Lent* if no objection on

that ground was made in the trial court. (*Welch*, *supra*, 5 Cal.4th at pp. 234-238; see *Sheena K.*, *supra,* 40 Cal.4th at p. 881-882.) This forfeiture rule also applies in the juvenile courts to claims that a particular condition of probation fails the *Lent* test. (*Vincent G.*, *supra*, 162 Cal.App.4th at p. 246; *In re Justin S.* (2001) 93 Cal.App.4th 811, 814.) In addition, in *Sheena K.*, the Supreme Court considered at length whether and to what extent the forfeiture doctrine extends to constitutional challenges to probation conditions. (*Sheena K.*, *supra,* 40 Cal.4th at pp. 883-889.) The high court concluded that constitutional challenges to probation conditions that present pure questions of law, capable of correction without reference to the particular sentencing record developed in the juvenile court, are not subject to forfeiture for failure to object in the juvenile court. (*Id.* at pp. 885-889.) Conversely, the court held that certain constitutional challenges can be forfeited, stating: "[W]e do not conclude that 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." ' " (*Id.* at p. 889.)

With these concepts in mind, we consider in turn each of Alexander's objections to the four probation conditions here at issue.

## A.      *Unsupervised Contact with Minors Under 14 (Condition 26)*

As set forth above, Condition 26 provides: "The minor remain away from all children under the age of 14 unless supervised by a responsible adult over the age of 21, who is aware the minor is on probation for a sexual offense. Further, all contact must have prior approval by the probation officer and treatment provider. The minor must notify the probation officer and treatment provider immediately if incidental contact with children from whom the minor is restricted occurs and immediately remove himself from the situation in a safe and responsible manner." Alexander argues that Condition 26 is unreasonable under the *Lent* test and constitutionally infirm as both vague and overbroad.

We agree with the People that Alexander has forfeited his argument that Condition 26 runs afoul of *Lent* because he failed to raise that issue in the juvenile court. (*Vincent G.*, *supra*, 162 Cal.App.4th at p. 246.) Moreover, we read the People's claim of

8

forfeiture to encompass any ground requiring reference to the dispositional record below. (See *Sheena K.*, *supra,* 40 Cal.4th at pp. 885-889.) Alexander also argues that Condition 26 is unconstitutionally overbroad because a blanket stay away order from all minors under 14 is a "sweeping limitation on [his] liberty" that was unnecessary given the overwhelming evidence of his good character and the aberrational nature of his attack on his half-sister. This, however, is precisely the type of argument described in *Sheena K.* as being subject to the doctrine of forfeiture because it demands reference to the "particular sentencing record" developed in the juvenile court. (*Id.* at p. 889.) Since Alexander failed to raise his overbreadth challenge to Condition 26 below, we conclude that it, too, is forfeited.

Alexander, however, also challenges the constitutionality of Condition 26 on vagueness grounds. Specifically, he argues that Condition 26 should be modified to require that he stay away from all children *known by him to be* under the age of 14 unless supervised appropriately. This argument is not subject to forfeiture because it is a pure question of law which we can resolve without reference to the juvenile court's sentencing record. (Cf. *Sheena K.*, *supra,* 40 Cal.4th at p. 889.) The People argue generally that the "prohibition on contact with children under the age of 14 without adult supervision is sufficiently precise so that appellant knows he is to avoid being alone with young minors unless under the supervision of an adult," but they do not oppose the modification of Condition 26 to add a knowledge requirement.

Limitations on a probationer's right to associate with a particular class of individuals have been routinely upheld in the appellate courts. (See, e.g., *Sheena K.*, *supra,* 40 Cal.4th at pp. 891-892; *People v. Moses* (2011) 199 Cal.App.4th 374, 377-378 [restriction of unsupervised contact with minors]; *People v. Turner* (2007) 155 Cal.App.4th 1432, 1435-1436 [restriction of unsupervised contact with persons under the age of 18] (*Turner*).) With equal regularity, however, such limitations have been modified at the appellate level to include a scienter requirement in order to withstand constitutional challenge on vagueness grounds. (See., e.g., *Sheena K.*, *supra,* 40 Cal.4th at pp. 891-892; *Victor L.*, *supra*, 182 Cal.App.4th at p. 911; *Turner*, *supra*, 155

Cal.App.4th at pp. 1435-1436.) We note that at least one appellate court has stated that it will no longer entertain these types of appeals—which it characterized as appearing with "dismaying regularity"—because a substantial body of case law now exists which makes clear that "a probationer cannot be punished for presence, possession, association, or other actions absent proof of scienter." (*People v. Patel* (2011) 196 Cal.App.4th 956, 960.) Thus, the *Patel* court now treats a knowledge requirement as necessarily implied in such probation conditions. (*Id.* at pp. 960-961.)

While we are sympathetic to the frustrations underlying the *Patel* court's holding, we observe that the language of a probation condition does not exist solely to aid the courts in determining whether a violation of that condition has occurred. Rather, to survive constitutional challenge on vagueness grounds, it should also be " 'sufficiently precise for the probationer to know what is required of him.' " (*Sheena K.*, *supra,* 40 Cal.4th at p. 890.) While the courts may understand restrictions which are "necessarily implied," we doubt they are as obvious to the average juvenile court ward. (See *E.O.*, *supra*, 188 Cal.App.4th at p. 1157 ["probation conditions—particularly in juvenile cases—should be as *comprehensible* as possible"].) We will therefore modify Condition 26 to contain the knowledge requirement agreed to by both parties.

**B.      *Possession of Sexually Arousing Materials (Condition 30)***

Alexander next challenges Condition 30 which states: "The minor shall not own, use, or possess any form of sexually arousing materials which include computer based movies, videos, magazines, books, games, sexual aids or devices, or any material which depicts partial or complete nudity or sexually explicit language, nor frequent any establishment where such items are the primary commodity for sale." Alexander contends that the contested condition is unconstitutionally overbroad because he has no history of sexual misconduct (other than the offense here at issue), there is no evidence that he possesses or abuses sexually explicit materials, and there is no evidence that such materials were related in any way to his sexual abuse of Jane. Thus, he claims, Condition

30 is not narrowly tailored to his individual needs or reasonably related to his rehabilitation.[3]

We disagree.  It is true, as Alexander argues, that *Turner*, *supra*, 155 Cal.App.4th 1432—which upheld a similar probation condition in the face of an overbreadth challenge—is distinguishable because the adult defendant in that case had a history of convictions for possessing child pornography and indecent exposure involving child victims.  (*Id.* at p. 1437.)  However, a minor's constitutional right to use or possess sexually arousing materials is significantly more circumscribed than that of an adult probationer and the permissible scope of the juvenile court's discretion in formulating a probation condition limiting a minor's access to such materials is much broader.  (See *Powell's Books, Inc. v. Kroger* (9th Cir. 2010) 622 F.3d 1202, 1212 [a state can constitutionally impose restrictions on a minor's access to material considered harmful to minors even if the material is not obscene with respect to adults]; *Sheena K.*, *supra*, 40 Cal.4th at p. 889; *D.G.*, *supra*, 187 Cal.App.4th at p. 52.)  Moreover, although there is no evidence in the record that Alexander used or possessed sexually arousing materials, the dispositional record is remarkable in this case for the utter lack of any obvious triggers or explanation for Alexander's unprovoked and seemingly aberrational sexual attack on his younger half-sister.  Under such circumstances, we conclude that prohibiting Alexander's possession or use of sexually arousing materials while he is engaged in sex offender treatment is reasonably related to his rehabilitation with respect to this very serious offense.

Alexander also argues that Condition 30 is unconstitutionally vague because the term " 'sexually arousing materials' " is inherently imprecise and subjective.  He

---

[3] Again, this is an argument that requires our analysis of the particular dispositional record developed below and is therefore arguably forfeited by Alexander's failure to object on this basis in the juvenile court.  (*Sheena K.*, *supra,* 40 Cal.4th  at p. 889.)  The People, however, do not raise forfeiture in connection with Condition 30.  We will therefore consider the merits of Alexander's overbreadth claim.  For similar reasons, we also consider the merits of Alexander's overbreadth claim involving Conditions 19 and 31.

correctly points out that a similar condition of probation was modified to add a knowledge requirement in *Turner*, *supra*, 155 Cal.App.4th at p. 1436. We agree with the People that Condition 30 is more precise than the condition at issue in *Turner* because it lists various categories of sexually arousing materials (such as movies, magazines, and sexual aids or devices) that should be avoided. Nevertheless, for reasons similar to those set forth above in our discussion of Condition 26, we believe (and the People do not disagree) that the condition is properly subject to modification to include a scienter requirement. Thus, we will modify Condition 30 to indicate that Alexander "shall not *knowingly* own, use, or possess any form of sexually arousing materials . . . ."

## C. *Internet Restrictions/Warrantless Access (Conditions 19 and 31)*

Finally, Alexander contends that Conditions 19 and 31 should be stricken as unconstitutionally overbroad. Pursuant to Condition 19: "The minor shall disclose to the minor's probation officer all electronic mail accounts, all Internet accounts, and any other means of access to any computer or computer network, all passwords and access codes. The minor shall consent to the search of that electronic mail and Internet accounts, and any computer system at any time and the seizure of any information or data contained therein without a search warrant or probable cause." Condition 31 additionally provides that "[t]he minor is prohibited from participating in chat rooms, using instant messaging, Internet Chat Query (ICQ), or other similar communication programs." Alexander contends that these restrictions are improper in his case because his offense did not involve use of the Internet and there is no indication in the record that he uses the Internet for prohibited purposes.

It is true that conditions of probation prohibiting Internet access have often been upheld in cases where the underlying crimes involved use of the Internet. (See *Victor L.*, *supra*, 182 Cal.App.4th at p. 923 [listing cases].) Further, a complete ban on Internet use has, at times, been deemed unconstitutionally overbroad with respect to various adult probationers. (*Id.* at pp. 923-924 [listing cases].) However, we again point out that juvenile courts have broader discretion to formulate conditions of probation than their adult counterparts because minors are in greater need of guidance and supervision and

12

possess more circumscribed constitutional rights. (*Sheena K.*, *supra*, 40 Cal.4th at p. 889; *D.G.*, *supra*, 187 Cal.App.4th at p. 52.) Moreover, here we do not have a complete ban on Internet usage, but a limitation with respect to certain social networking along with a provision allowing monitoring by Probation. In *Victor L.*, the First District rejected an overbreadth challenge to a similar condition of probation for a juvenile gang member who pled to misdemeanor possession of a dangerous weapon, characterizing it as the "least restrictive" of possible Internet limitations because it did not ban all computer and Internet access and permitted (but did not require) monitoring. (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 923, 925-927.) Indeed, in that case, the court also left in place an additional condition requiring that *all* Internet access be supervised, stating that the two conditions together limited the minor's access to the Internet "in ways designed to minimize the temptation to contact his gang friends or to otherwise use the computer for illegal purposes." (*Id.* at pp. 925-927.) Similarly, in this case, Conditions 19 and 31 place limitations on Alexander's ability to contact Jane or other potential victims or gain access to computer-based sexually stimulating materials while he is engaged in sex offender treatment. They are therefore reasonably related to his rehabilitation and we see no error.

### III.  DISPOSITION

The juvenile court's disposition order is modified as follows: (1)  The first sentence of Condition 26 is modified to state, "The minor remain away from all children known by him to be under the age of 14 unless supervised by a responsible adult over the age of 21, who is aware the minor is on probation for a sexual offense" ; and (2) Condition 30 is modified to state, "The minor shall not knowingly own, use, or possess any form of sexually arousing materials which include computer based movies, videos, magazines, books, games, sexual aids or devices, or any material which depicts partial or complete nudity or sexually explicit language, nor frequent any establishment where such items are the primary commodity for sale." As so modified, the judgment is affirmed.

13

_____
REARDON, J.

We concur:


_____
RUVOLO, P.J.


_____
RIVERA, J.


14