Filed 6/3/21  P. v. Tyler CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090259 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE018887) |
| v. | |
| TREVELL TYLER, | |
| Defendant and Appellant. | |

A jury found defendant Trevell Tyler guilty of assault with a firearm (Pen. Code, § 245, subd. (a); count two),[1] and the trial court sentenced him to the lower term of two years in state prison.  Defendant appeals, arguing the court erred when it relied on section 1203, subdivision (e)(2) to conclude he was presumptively ineligible for probation.  We agree that remand for resentencing is required.

---

[1]  Undesignated statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Evidence from Trial*

Testimony and other evidence introduced at defendant's trial showed that over a period of approximately three weeks, Angela S. purchased marijuana from and engaged in sexually intimate behavior with defendant's brother, Trevon Tyler (Trevon). One evening, Angela S. and Trevon were together in Angela S.'s home, when they began to argue. As the argument escalated, Trevon took a bullet out of his pocket and said he could kill her with one bullet. He repeatedly grabbed Angela S. by the throat and hit her in the head. Angela S. fled from the house, and when she returned, Trevon and her car, along with her cell phone and some of her belongings, were gone.

After Angela S. returned home, she went to her neighbor Kristopher B.'s house and asked him to bring his guns back to her house. He helped her retrieve her car and belongings using a phone location application to find her cell phone, and they returned to her home. She had Kristopher B.'s handgun and he had his shotgun. Eventually, Trevon knocked on the door. Angela S. testified that Kristopher B. opened the door holding the shotgun pointed down. Angela S. could not see Trevon, but heard him say "Whoa, whoa, whoa" and ask for his cell phone, which he had left behind. Angela S. could see defendant in the doorway. She saw defendant lift his shirt and pull out a silver revolver, which he pointed down and covered with the other hand. Trevon asked to enter the house but Kristopher B. refused to let him inside. Angela S., still holding Kristopher B.'s handgun, heard their voices escalating and went to the garage.

Kristopher B. testified that when he first opened the door, the man with Trevon pulled a silver semiautomatic pistol from his waistband and aimed it at Kristopher B.'s head.[2] He saw a bullet in the chamber. However, a firearms expert testified that it would

_____

[2] As we later discuss, Kristopher B. did not identify defendant as the man who pointed the gun at trial. He referred to Trevon and defendant as "the weed man and . . . some

2

be nearly impossible for a person to see whether a semiautomatic weapon was loaded without a direct light source down the barrel.  The men argued until Kristopher B. shut and locked the door.  He called 911.  While on the phone, Kristopher B. heard gunshots fired at the house.  He hid behind the couch and fired his shotgun back until he heard a car drive away.  Angela S. did not fire her gun at any time.  Neither Angela S. nor Kristopher B. saw who fired the gun at the house.  Both Trevon and defendant had guns on a previous occasion when they were both at Angela S.'s house.

When the police arrived, they found five bullet holes and expended bullets that were not from Kristopher B.'s shotgun.  Kristopher B. later identified defendant as the man who pointed the gun at him from a photo lineup.  However, he specifically declined to identify defendant as the gunman at trial, stating the gunman was taller than defendant.

Defendant testified on his own behalf.  He said that Trevon called him on the night of the incident, asking him to help Trevon retrieve his cell phone.  When they arrived at Angela S.'s house, Trevon told defendant to stay back at the car while Trevon went to the door, so defendant sat on the trunk of the car.  Defendant heard Trevon say "Whoa, whoa, whoa," which caused defendant to approach the door.  He saw Kristopher B. in the doorway pointing a shotgun at Trevon's face.  Defendant was unarmed.  After Trevon and Kristopher B. argued, Kristopher B. pulled back his shotgun into the house and slammed the door.

Defendant walked back towards their car; he heard gunshots and ducked into the car.  He did not see who was shooting.  Then Trevon got into the car and he had a gun.  Defendant assumed that Trevon had fired the gun.  The police arrested Trevon the next day, and Trevon's criminal case was resolved prior to defendant's trial.

---

other guy.  I guess it was his brother.  I'm not really sure who else was there."  He then specifically declined to identify defendant in court, saying the gunman was *not* defendant.

*Charges and Verdicts*

The People charged defendant with discharging a firearm at an inhabited dwelling (§ 246; count one), and assaulting Kristopher B. with a semiautomatic weapon (§ 245, subd. (b); count two), with the special allegation that appellant used a semiautomatic firearm (§ 12022.5, subds. (a) & (d)).

The jury was instructed with the lesser included offenses of negligent discharge of a firearm for count one (§ 246.3), and assault with a firearm for count two (§ 245, subd. (a)(2)). It was also instructed on aiding and abetting as a possible theory of liability for all the charged offenses. In closing, the prosecutor argued that appellant was guilty of both crimes, if not as the gunman then as an aider and abettor. The jury found defendant guilty of assault with a firearm, the lesser included offense option for count two, and not guilty of the remaining charges. The verdict forms did not reflect whether the jury found defendant guilty as the perpetrator or as an aider and abettor.

*Sentencing*

Defense counsel consistently argued that defendant was eligible for probation and that probation should be granted. After the jury reached its verdict but prior to sentencing, defense counsel argued that defendant should not be taken into custody while awaiting judgment and sentencing because he was eligible for probation. Defendant's sentencing memorandum requested probation and argued that defendant was eligible, and it twice noted the verdict did not include a finding of personal use. The memorandum further noted that the probation report "assumed facts that were not proven." The People's motion to deny probation and statement in aggravation, in turn, requested the maximum four-year term.

The probation report twice stated that defendant was not eligible for probation pursuant to section 1203, subdivision (e)(2), unless the court found unusual circumstances warranting probation. The report concluded that although defendant was

4

youthful and had an insignificant criminal record, it did not recommend probation because of the nature, seriousness, and circumstances of the crime.

At sentencing, the trial court announced that it had considered the probation report, the memorandum for sentencing and statements in mitigation, letters in support of defendant, and the People's motion to deny probation and statement in aggravation. Defense counsel again argued that probation was permissible and appropriate. Neither party nor the trial court specifically addressed whether defendant was presumptively ineligible for probation prior to imposition of sentence.

Following arguments by counsel, the trial court stated that: "defendant is ineligible for probation pursuant to Penal Code section 1203(e)(2) in that it was found that he used a deadly weapon and that is true unless the Court finds there to be an unusual case where the interests of justice in fact could be served by granting [defendant] probation." The court indicated it had "considered the factors set forth in [Cal. Rules of Court, rules] 4.408 and 4.413 to determine whether or not the statutory limitation on probation has been overcome," and considered the positions of probation and the parties, and concluded: "I do not find that this is an unusual case and, therefore, probation is denied." (RT 751) The court imposed the low term of two years in state prison.[3]

## DISCUSSION

The parties briefly raise the issues of forfeiture and ineffective assistance of counsel, debating whether defense counsel adequately objected to the conclusion defendant was ineligible for probation due to a finding that he used a deadly weapon. We conclude counsel preserved the objection.

---

[3] Although defendant was sentenced in August 2019, this case was not fully briefed until January 2021 and was assigned to this panel in March 2021.

5

Defense counsel repeatedly requested probation and argued that defendant was eligible therefore. He twice noted that the verdict did not include a finding of personal use of a gun. Thus, counsel's objection sufficed to alert the trial court to the issue and to preserve the issue on appeal. Because we must reach the merits in any event given defendant's alternative claim of ineffective assistance of counsel, we exercise our discretion to do so at the outset. (See, e.g., *In re Victor L.* (2010) 182 Cal.App.4th 902, 928 [addressing the merits of a forfeited challenge to probation condition where ineffective assistance of counsel claimed].)

All defendants are eligible for probation, in the discretion of the sentencing court, unless a statute provides otherwise. (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) Some statutes bar probation absolutely, while others provide that a defendant is ineligible except in unusual cases where the interests of justice would be served. (*Ibid.*) Here, the trial court concluded that section 1203, subdivision (e)(2) rendered defendant ineligible for probation absent unusual circumstances.

Section 1203, subdivision (e) provides: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] . . . [¶] (2) Any person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which that person has been convicted." This section renders a defendant conditionally ineligible for probation *only* when there has been a finding that defendant *personally used* a deadly weapon. (*People v. Alvarez* (2002) 95 Cal.App.4th 403, 408 [holding that § 1203, subd. (e)(2) requires personal use of a deadly weapon].) The statute does not apply to aiders and abettors. (*Alvarez,* at p. 409.)

Defendant argues the trial court abused its discretion when it found him presumptively ineligible for probation and sentenced him accordingly. He argues that because the jury's verdict does not reflect whether it found him guilty as the shooter or as an aider and abettor, the jury did not necessarily find that he was armed. The Attorney

6

General counters that "the facts would have led the jury to conclude" that defendant personally used a deadly weapon. He argues that the trial court implicitly found that defendant used a deadly weapon when the court stated that the jury found defendant guilty of a "crime of violence" with "a threat of great bodily harm" to Kristopher B. Defendant has the better argument.

"[W]hen . . . the sentencing court bases its determination to deny probation in significant part upon an erroneous impression of the defendant's legal status, fundamental fairness requires that the defendant be afforded a new hearing and 'an informed, intelligent and just decision' on the basis of the facts." (*People v. Ruiz* (1975) 14 Cal.3d 163, 168 [remand required where trial court erroneously believed defendant was presumptively ineligible for probation]; *People v. Alvarez, supra*, 95 Cal.App.4th at pp. 408-409 [same].)

Here, the jury neither explicitly found that defendant personally used a deadly weapon, nor did it implicitly so find, as it was given the viable option of finding defendant guilty as an aider and abettor. Indeed, the jury acquitted defendant of discharging a firearm at an inhabited dwelling. The evidence presented at trial was inconclusive, and the prosecutor argued guilt under both theories.

The prosecutor told the jury: "Aiding and abetting. So what if you all get back there and say I'm not sure if [defendant] really had a gun . . . . [¶] Let's say you're not sure. There's another way you can find defendant guilty of both of these crimes and that's aiding and abetting. . . . [¶] So what does that mean? All the things I have to prove to you has [*sic*] elements. The perpetrator committed the crime. To say you think maybe it really was the brother who show the firearm, he would be the perpetrator. You would have to find . . . Trevon Tyler was the one with the firearm and that he not only pointed it at [Kristopher B.] but then shot into [the] home." She then went on to argue that aiding and abetting was a reasonable theory because the crimes were "a joint

7

venture," concluding that defendant was "in on it. They are so close. They are in it together."

This argument for aiding and abetting as an alternate theory was supported by the evidence, which showed that both defendant and Trevon were outside Angela S.'s home prior to the shooting. No one saw who shot at the house. Trevon had threatened to shoot Angela S. earlier that day. Kristopher B. identified defendant as the man holding the gun at the door in a police lineup, but then said that man was *not* defendant at trial. Angela S. said the gun was a revolver and was pointed down at all times; Kristopher B. said the gun was a semiautomatic pistol and was pointed at his head. The firearms expert indicated Kristopher B.'s statement regarding a bullet in the gun's chamber lacked credibility. Defendant testified that he was not armed, and that Trevon was. Both defendant and Trevon had been seen with guns at the house on an earlier date.

Nor did the trial court make a factual finding, implicit or otherwise, that defendant personally used a gun. The court's statement that the jury found defendant committed a "crime of violence" with a "threat of great bodily harm" merely correctly described the crime of assault with a firearm. It did not constitute an independent finding of fact regarding defendant's role in the crime.

The record demonstrates the trial court misunderstood the scope of its discretion and may have relied upon the error to deny probation. A new sentencing hearing is therefore necessary for the trial court to consider defendant's probation request under the appropriate legal standard. We will vacate the sentence and remand the matter for resentencing.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing.  The judgment is otherwise affirmed.

/s/
Duarte, J.

We concur:

/s/
Raye, P. J.

/s/
Krause, J.

9