Filed 11/21/23  P. v. Mercer CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050743 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 21CR00430) |
| v. | |
| DAMON MERCER, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Damon Mercer pleaded no contest to obtaining money or property by false pretenses (Pen. Code, § 532, subd. (a))**[1]** and misdemeanor violation of Labor Code section 3700.5.  The trial court suspended imposition of sentence and placed defendant on probation for two years with various terms and conditions, including that he participate in educational, therapeutic, and/or vocational programming as directed by his probation officer.  The court also ordered defendant to pay various amounts, including a restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8, subd. (a)(1)), and a court facilities assessment of $30 (Gov. Code, § 70373, subd. (a)(1)).

---

**[1]** All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant contends that the probation condition requiring his participation in educational, therapeutic, and/or vocational programming as directed by the probation officer violates the separation of powers doctrine by delegating judicial authority to the probation officer.  Defendant also argues that the trial court violated his right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) by ordering him to pay a total of $370 for the fine and assessments without first holding a hearing to determine his ability to pay.

For reasons we will explain, we will affirm the order of probation.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Offenses*[2]

The victim hired defendant to replace a deck around her entire house.  Unbeknownst to the victim, defendant used another person's contractor's license number for the contract.  That contractor did not know defendant.  Defendant had other people working with him on the deck job, but he did not have workers' compensation insurance.  The victim paid defendant several thousand dollars, but he did not complete the job.  Further, the work that was done by defendant was deficient, and it was estimated that it would cost $48,000 to correct the work.

### B. *The Charges and Pleas*

On November 2, 2021, defendant was charged by information with obtaining money or property by false pretenses (§ 532, subd. (a); count 1), fraudulent use of a contractor's license number (Bus. & Prof. Code, § 7027.3; count 2), misdemeanor failure to comply with the requirements of a home improvement contract (Bus. & Prof. Code, § 7159.5, subd. (a)(3); count 3), misdemeanor contracting without a license (Bus. & Prof.

---

[2] The facts underlying defendant's offenses are taken from the preliminary hearing transcript, which provided the factual basis for his pleas.

2

Code, § 7028; count 4), and misdemeanor violation of Labor Code section 3700.5 (count 5).

In October 2022, defendant pleaded no contest to counts 1 and 5. He entered his pleas with the understanding that, among other things, he would receive probation, "a lid of 180 days," a *Harvey*[3] waiver would be entered for purposes of restitution and sentencing, and his counsel would "argue a [section] 17(b) motion." The remaining counts were dismissed.

### C. *The Probation Report*

According to the probation report, which was dated December 15, 2022, defendant was 54 years old. The victim hired defendant in 2018 to replace a 4,000-square-foot deck at the victim's residence for $85,000.

Defendant was interviewed by the probation officer on December 13, 2022. Defendant told the probation officer that he met the victim while he was working as the superintendent of an exterior paint job on the victim's residence. Defendant denied putting a contractor's license number on the signed contract and stated his belief that the victim put it on the contract in error. He also told the probation officer that the deck job ran over budget and became difficult to finish but that he still tried to complete the project. He was in a car accident, which slowed him down physically and caused physical pain and depression. Defendant reported that he did not quit the job; the victim fired him. He claimed that they agreed on a settlement amount of $8,000, that he made payments of $6,000, but that the victim refused the last payment.

Defendant indicated that he was willing to follow the terms and conditions of probation, including paying restitution. When the probation officer asked how much defendant could "afford to pay monthly, [defendant] was unsure but indicated he may be able to afford $200 per month."

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754.

3

Defendant provided the following personal information to the probation officer. Regarding education, defendant reported that he had attended high school through 12th grade but did not obtain a diploma. He attended De Anza College and Foothill College in the 1990's. Regarding his health, defendant reported that he had experienced various issues related to a car accident a few years ago, including "two or three herniated discs." Regarding employment, defendant reported that he had worked in construction since he was 15 years old and that he was a project superintendent for several years. He also had prior experience as a chef. Defendant reported that he was presently employed as a cook on commercial squid fishing boats in southern California. The hours varied between two and 100 hours per week. Defendant also worked as a "handyman on the side." He reported wages of $4,000 per month, assets of "$1,200 in Bitcoin," and owing $1,800 in state taxes.

The victim told the probation officer that defendant became uncommunicative when problems regarding the deck project were raised with him. The problems included missing railings and unsafe stairs. Over four years later, the victim was still repaying a loan taken out for the project and could not afford to hire someone to complete the project. The victim sought $76,802 in restitution, which was based on the following: $48,502 to correct and finish the deck work; $25,000 paid to defendant and obtained by false pretenses; $3,000 paid to a third party to repair and finish the stairs to the deck; and $300 paid to a third party to remove debris that defendant left after he abandoned the project.

The probation report included a section entitled "risk factors and criminogenic needs." (Capitalization & boldface omitted.) The probation report stated that based on a risk assessment, "defendant would receive low intensity interventions if placed on community supervision." Based on a "needs assessment," defendant's "identified needs" were described as "isolated/situational/temporary circumstances." (Capitalization & boldface omitted.) The probation report indicated that the "program/condition

4

recommendation" was "cognitive behavioral therapy."  (Capitalization & boldface omitted.)

Regarding disposition of the case, the probation officer stated that defendant's conduct resulted in significant financial losses to the victim and defendant took only "limited responsibility for wrongdoing."  However, the probation officer recommended that defendant be granted probation, because he did not have a serious criminal history, was not on probation at the time, was willing to comply with probation terms, appeared capable of doing so, and imprisonment would "impede" his ability to pay restitution. Among other terms and conditions, the probation officer recommended that defendant serve 90 days in jail, "[p]articipate in cognitive behavioral therapy at Probation direction," and pay victim restitution in the amount of $76,802.  The probation officer also recommended a restitution fine of $300 (§ 1202.4, subd. (b)), a probation revocation restitution fine of $300 stayed (§ 1202.44), a court operations assessment of $40 (§ 1465.8, subd. (a)(1)), and a court facilities assessment of $30 (Gov. Code, § 70373, subd. (a)(1)).

### D.  *Sentencing*

The sentencing hearing was held on January 20, 2023.  Defendant denied telling the probation officer that he believed the victim had written a contractor's license number on the contract.  Defendant indicated that the probation officer was mistaken in attributing this statement to him in the probation report.  Defendant indicated that he had a friend "put [the contract] together" for him and that he "had no idea the license was there."  Defendant also disputed the amount of restitution requested by the victim but offered to stipulate to $50,000 in victim restitution.  He moved to have the felony reduced to a misdemeanor.

The prosecutor opposed reducing the felony to a misdemeanor, declined to stipulate to $50,000 in victim restitution, and requested that the court order the full amount of restitution requested by the victim plus interest.

5

The trial court stated that it was not going to grant the motion to reduce the felony now, but that "we'll keep that open" for defendant to show he was "staying out of trouble" and making restitution payments. The trial court indicated that the matter would be set for a restitution hearing.

The trial court proceeded to suspend imposition of sentence and place defendant on probation for two years with various terms and conditions, including 90 days in jail. When the court announced the probation condition requiring defendant's participation in cognitive behavioral therapy at the direction of the probation officer, the following exchange occurred between defense counsel and the court:

"[Defense counsel]: I would object to that term. While I'm sure that most people can benefit from therapy, there does need to be a nexus between the offense caused and the probation terms and there's no allegations that this was caused by any kind of mental health issues. And there's simply no nexus between ordering [cognitive behavioral therapy] and the charged offense.

"THE COURT: He'll participate in whatever educational, therapeutic, or vocational programming your probation officer directs. That's a normal term of probation.

"[Defense counsel]: That's even broader than the one –

"THE COURT: That's what I'm ordering. If you want to appeal it, go ahead, [defense counsel]. I guarantee you that will be approved by the Court of Appeal. I guarantee it. [¶] I appreciate your objections, however."

The trial court thereafter pronounced additional terms and conditions of probation and then ordered a restitution fine of $300 and court facilities and court operations assessments of $70. After ordering these amounts, the following exchange occurred between defense counsel and the court:

"[Defense counsel]: Your Honor, I would ask the Court to make a finding under [*Dueñas*], an inability to pay on those fines.

6

"THE COURT: No. [Defendant] has identified to Probation that he would be able to pay $200 per month in restitution. He said that, I didn't say that.

"[Defense counsel]: He's also said that he's disabled, not working, and is going to have probably somewhere in the tens of thousands of dollars of restitution to pay. [¶] I appreciate that he has been accommodating in speaking to Probation, but I also think that those of us who are familiar with this payment system or familiar with the kind of money also need to put our own outside judgment on the matter. And it's clear, from looking at [*Dueñas*], that he doesn't have the ability to pay those fines.

"THE COURT: It is not at all clear and he'll pay them."

### III. DISCUSSION

#### A. *Probation Condition*

At sentencing, the trial court ordered that defendant, as a condition of probation, "participate in whatever educational, therapeutic, or vocational programming [his] probation officer directs," which the court explained was "a normal term of probation." Consistent with the trial court's oral pronouncement, the preprinted form containing the terms and conditions of defendant's probation, which was signed by defendant, requires him to "[p]articipate in an educational/vocational/therapeutic program [¶] [a]t the direction of the probation officer."

On appeal, defendant contends that the probation condition violates the separation of powers doctrine because the trial court "explicitly delegated judicial authority to probation to determine what conditions to impose." He requests that this court order the trial court to "impose a specific term of probation." Defendant also argues that his claim has not been forfeited because it involves a pure question of law, and he further argues that any objection would have been futile as the court "cut . . . off [his trial counsel] in mid-sentence." Defendant further contends that if his claim has been forfeited, his trial counsel rendered ineffective assistance of counsel by failing to object.

7

The Attorney General "do[es] not contend" that defendant's claim has been forfeited and instead argues that the probation condition does not unlawfully delegate judicial authority.

Although a claim may be forfeited by the failure to raise it below, a general exception exists to the forfeiture rule "where an objection would have been futile. [Citations.]" (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648.) In this case, defendant's trial counsel attempted to object to the probation condition requiring educational, therapeutic, or vocational programming. However, the trial court interrupted counsel midsentence and stated, "That's what I'm ordering. If you want to appeal it, go ahead . . . ." On this record, we will assume that defendant's appellate contention regarding an unconstitutional delegation of authority has not been forfeited, and we will analyze the substance of defendant's claim.

A trial court has broad discretion to impose probation conditions to foster rehabilitation of the defendant and to protect the public. (§ 1203.1, subd. (j); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) Further, the court "has authority to empower the probation department with authority to supervise the probation conditions." (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240.)

However, a trial court is also governed by the separation of powers doctrine. " 'The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.' (Cal. Const., art. III, § 3.) Although the separation of powers doctrine 'does not prohibit one branch from taking action that might affect another, the doctrine is violated when the actions of one branch defeat or materially impair the inherent functions of another.' [Citation.] 'Separation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible.' [Citation.]" (*In re D.N.* (2022) 14 Cal.5th 202, 212 (*D.N.*).)

8

Based on the separation of powers doctrine, it has been stated that "judicial powers may not be delegated to nonjudicial officers. [Citation.] While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer. [Citations.]" (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).) The "general rule [is] that a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer." (*In re Victor L.* (2010) 182 Cal.App.4th 902, 919 (*Victor L.*).) "The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359.) Safeguards against abuse of delegated authority is important. In the related context of juvenile probationers, "California courts have recognized that a juvenile court may place significant supervisory discretion in the probation department's hands, at least when the department's decisions are subject to judicial review. [Citations.]" (*D.N.*, *supra*, 14 Cal.5th at p. 208; see also *id.* at p. 208 [observing that "a similar degree of delegation to public officers" has been found permissible in the context of juvenile dependency visitation orders "so long as the juvenile court retains ultimate control"].)

We review a constitutional challenge to a probation condition de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

In this case, we do not read the challenged probation condition as delegating to the probation officer the initial decision as to whether "an educational/vocational/therapeutic program" is warranted. " 'A probation condition should be given "the meaning that would appear to a reasonable, objective reader." ' [Citation.] Following that precept, we read the challenged provision here *not* as delegating [the decision] to the probation officer but as indicating the court's advance approval" of an educational, vocational, and/or therapeutic program. (*D.N.*, *supra*, 14 Cal.5th at p. 211.) Thus, consistent with

9

the separation of powers doctrine, the trial court here performed its "duty to determine the nature of the requirements imposed on" defendant (*Smith*, *supra*, 79 Cal.App.5th at p. 902) by "dictat[ing] the basic policy of a condition of probation, leaving specification of details to the probation officer" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 919).

Further, we do not believe the trial court's delegation of the details of the specific program within those three types of programs (educational/vocational/therapeutic) was an improper delegation of authority. Although the probation condition in isolation may appear broad, consideration of the condition in the context of the probation report adequately circumscribes the nature of the probation condition and places appropriate boundaries on the probation officer's discretion in choosing an appropriate educational, vocational, and/or therapeutic program for defendant. The trial court ordered the programming in the context of defendant's particular circumstances as set forth in the probation report, and thus the probation report provides guidance to the probation officer in selecting an appropriate educational, vocational, and/or therapeutic program. In particular, the probation report stated that based on a risk and needs assessment, "defendant would receive low intensity interventions if placed on community supervision" and his "identified needs" were "isolated/situational/temporary circumstances." (Capitalization & boldface omitted.) Regarding defendant's education, the probation report stated that he had not obtained a high school diploma. Regarding defendant's vocation, the probation report indicated that defendant had been employed in construction and as a cook but his trial counsel at sentencing contended defendant was disabled and not working. Regarding therapeutic needs, defendant reported that after being in a car accident, he experienced physical pain, was "slowed . . . down physically" which scared him, and he became depressed. This report by defendant was in the context of him not being able to complete the victim's deck work. The probation report recommended "[c]ognitive behavioral therapy." On this record, the probation condition requiring "an educational/vocational/therapeutic program" is reasonably related to, and

10

would further, defendant's ability to maintain gainful employment, which would, at a minimum, facilitate his ability to pay fines and assessments and the anticipated victim restitution order.[4] The probation report – with its discussion of defendant's level of education, his claimed physical and mental health issues, the purported effect on his ability to work, the resultant need for cognitive behavioral therapy, and the obvious need for defendant to continue working in order to pay fines, assessments, and victim restitution – supports a more constrained interpretation of any discretion conferred to the probation officer by the probation condition requiring participation in "an educational/vocational/therapeutic program." Based on the record in this case, we determine that the probation condition does not violate the separation of powers doctrine. (See *People v. Penoli* (1996) 46 Cal.App.4th 298, 308 [explaining that "any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties"; a "trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability"].) We observe that if, at some point, the probation officer exercises the delegated authority to select a program that defendant believes is

---

[4] Defendant in this appeal does not challenge the reasonableness of a probation condition requiring participation in an educational, vocational, and/or therapeutic program. We note that a trial court has the express authority to "require as a condition of probation that the probationer go to work and earn money . . . to pay any fine imposed or reparation condition, to keep an account of the probationer's earnings, to report them to the probation officer and apply those earnings as directed by the court." (§ 1203.1, subd. (d).) Further, pursuant to section 1203.1, a trial court has the authority to require "any or all of the . . . conditions specified in this section," which include counseling and education programs, "and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (*Id.*, subd. (j); see *id.*, subd. (i)(1).)

11

unnecessary or inappropriate, he can seek judicial intervention by moving to modify the probation order to ensure that the program is necessary and properly related to his rehabilitation. (See *id.* at p. 308.)

Defendant, in support of his contention that the probation condition improperly delegates the trial court's authority to the probation officer, primarily relies on *Smith*, *supra*, 79 Cal.App.5th 897. We are not persuaded by defendant's reliance on *Smith*. In *Smith*, the trial court imposed a probation condition requiring the defendant to " 'participate in any treatment/therapy/counseling program, including residential, as directed by the probation officer.' " (*Id.* at p. 901.) The appellate court first determined that the condition was *not* an improper delegation of authority for failing to specify the nature of the treatment, counseling, or therapy. (*Id.* at pp. 902-903.) Rather, when considering the probation condition "in context" with the record, including another probation condition and the court's oral comments, the appellate court concluded that "the condition passes muster." (*Id.* at pp. 902, 903.) However, the appellate court nevertheless found an unconstitutional delegation of authority because the probation condition "delegate[d] to the probation officer *the discretion to decide whether* [*the defendant*] *must attend a residential program*, *as opposed to an outpatient program*." (*Id.* at p. 903, italics added.) The appellate court reached this conclusion based on the fact that "[a] residential program can impose far greater burdens on a person's liberty interests than an outpatient program" and, "[g]iven the significant liberty interests at stake, a court—not a probation officer—must make the decision to require a defendant to attend residential treatment. [Citations.]" (*Ibid.*) Unlike the probation condition at issue in *Smith*, which delegated to the probation officer the authority to determine whether a residential program, as opposed to an outpatient program, would be required, the probation condition in the instant case did not give the probation officer any such authority.

12

In sum, in view of the record in this case, defendant fails to establish that the probation condition constituted an unconstitutional delegation of authority by the trial court to the probation officer.

## B. *Fine and Assessments*

Defendant contends that the trial court violated his right to due process under *Dueñas*, *supra*, 30 Cal.App.5th 1157 by imposing a $300 restitution fine, a $40 court operations assessment, and a $30 court facilities assessment without first holding a hearing to determine his ability to pay these amounts.

The Attorney General contends that under due process principles, defendant's restitution fine was not unconstitutional.[5]  Regarding the court facilities and court operations assessments, the Attorney General argues that the failure to hold an ability to pay hearing was harmless "because there is nothing in the record to indicate that [defendant] did not have the present ability to pay the relatively small fines."  To the extent this court finds a due process violation and that the error was not harmless, the Attorney General argues that "the proper remedy is to remand to give [defendant] the opportunity to request a hearing on his ability to pay."

Where, as here, the statutory minimum restitution fine of $300 is imposed, a trial court by statute may not consider a defendant's ability to pay.  (§ 1202.4, subds. (b)(1) & (c).)  Likewise, the court operations assessment and the court facilities assessment are mandated by statute and require imposition without regard to a defendant's ability to pay.  (§ 1465.8, subd. (a)(1) [court operations assessment of $40 "shall be imposed on every

---

[5] We note that the Attorney General also contends that although *Dueñas* relied on due process principles in analyzing a defendant's ability to pay a restitution fine, the issue should instead be analyzed, according to the Attorney General, under the excessive fines clause of the Eighth Amendment to the federal Constitution.  Under this framework, the Attorney General argues that defendant's restitution fine was not excessive.  We decline to review defendant's restitution fine under the excessive fines clause of the Eighth Amendment as urged by the Attorney General because defendant has not raised an Eighth Amendment challenge.

conviction"]; Gov. Code, § 70373, subd. (a)(1) [court facilities assessment of $30 "shall be imposed on every conviction"]; *People v. Woods* (2010) 191 Cal.App.4th 269, 272; *People v. Kim* (2011) 193 Cal.App.4th 836, 842.)

In *Dueñas*, however, the appellate court concluded that imposition of the court operations assessment (§ 1465.8) and court facilities assessment (Gov. Code, § 70373) without a determination of the defendant's ability to pay was "fundamentally unfair" and violated due process under the federal and California Constitutions. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, at p. 1164.)

The Courts of Appeal, including panels of our own court, have reached conflicting conclusions about whether *Dueñas* was correctly decided. (See, e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 926-927 [applying "the principles articulated [in *Dueñas*]"]; *id*. at pp. 935-940 (dis. opn. of Elia, J.); *People v. Adams* (2020) 44 Cal.App.5th 828, 832 [concluding that "*Dueñas* was wrongly decided"]; *id*. at pp. 832-833 (dis. opn. of Premo, J.); *People v. Petri* (2020) 45 Cal.App.5th 82, 90 [finding that *Dueñas* was not "persuasive"]; *id*. at p. 95 (dis. opn. of Premo, J.); *People v. Greeley* (2021) 70 Cal.App.5th 609, 625 [determining that "*Dueñas* was wrongly decided"].) The issue of whether an ability to pay determination must be made is currently pending before the California Supreme Court. (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 95 (*Kopp*) [agreeing with *Dueñas* that due process requires an ability to pay determination before imposition of court operations or court facilities assessment], review granted Nov. 13, 2019, S257844).

While we await the California Supreme Court's decision in *Kopp*, we need not address in this case whether *Dueñas* was correctly decided.

14

First, even assuming defendant was entitled to a hearing regarding his ability to pay, we observe that the trial court entertained an ability to pay objection by defendant's trial counsel and ruled on that objection. Defense counsel never requested a separate hearing on the issue; he simply requested "the Court to make a finding under [*Dueñas*], an inability to pay on those fines." The court indicated it would not make such a finding because defendant had "identified to Probation that he would be able to pay $200 per month in restitution." Defense counsel made a further argument to the court regarding defendant's inability to pay and concluded by stating that "it's clear, from looking at [*Dueñas*], that [defendant] doesn't have the ability to pay those fines." The court disagreed, ruling, "[H]e'll pay them." The record thus reflects that the court heard argument from defense counsel concerning defendant's purported inability to pay, and counsel never requested a hearing to, for example, present evidence concerning defendant's purported inability to pay.

Second, even assuming defendant was entitled to and requested a separate ability to pay hearing, we would find the claimed error in failing to provide such a hearing harmless beyond a reasonable doubt. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [*Dueñas* error subject to harmless beyond a reasonable doubt standard of error]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [same]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075 [same].) " 'Ability to pay does not necessarily require existing employment or cash on hand.' [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's present ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability . . . to earn money after his release from custody. [Citation.]" (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837, italics omitted.) These factors in determining an ability to pay a restitution fine would appear to apply equally to court assessments, to the extent an ability to pay determination is required regarding such amounts.

15

In this case, although defendant's trial counsel argued at the January 20, 2023 sentencing hearing that defendant was disabled and not working, the probation officer had interviewed defendant only one month prior, on December 13, 2022. Defendant reported that he was working, earning income, and could make monthly restitution payments. Specifically, despite being in a car accident at some earlier unspecified time and experiencing health issues, defendant told the probation officer that he was presently employed as a cook on commercial squid fishing boats where he worked between two and 100 hours per week, that he also worked as a "handyman on the side," that he had wages of $4,000 per month, and that he had assets of "$1,200 in Bitcoin." Moreover, notwithstanding his health issues and owing state taxes, defendant expressed his willingness to pay restitution and indicated he could afford $200 per month. On this record, we conclude that any error from purportedly failing to hold an ability to pay hearing regarding the ordered $370 for a fine and assessments was harmless beyond a reasonable doubt.

## IV. DISPOSITION

The order of probation is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
BROMBERG, J.

_____
ADAMS, J.*

*People v. Mercer*
**H050743**

_____

     *Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.